**AVEMCO INSURANCE COMPANY, a Maryland Corporation, Plaintiff,**

v.

**May Evelyn Kirkpatrick CHUNG, Executrix of the Estate of Robert C. H. Chung, Deceased, Defendant.**

**Civ. No. 73–3866.**

United States District Court,
D. Hawaii.

Jan. 7, 1975.

---

A. Singleton Cagle, Jeffrey S. Portnoy, Cades, Shutte, Fleming & Wright, Honolulu, Hawaii, for plaintiff.

Paul F. Cronin, Allan S. Haley, Cronin, Fried, Sekiya & Haley, Honolulu, Hawaii, for defendant.

Edmund Burke, Conroy, Hamilton, Gibson, Nickelsen & Rush, Honolulu, Hawaii, for intervenors.

## DECISION

PENCE, District Judge.

Plaintiff, AVEMCO Insurance Company (AVEMCO), first issued an aviation insurance policy to Dr. Robert C. H. Chung on his 1959 Beech G–50 aircraft in December 1967. Dr. Chung thereafter annually renewed his insurance coverage with AVEMCO. AVEMCO's policy for the December 1972 to December 1973 policy year was extant,[1] when on May 20, 1973, the insured aircraft crashed near Honolulu airport. Dr. Chung, who was piloting the plane, and his five passengers were all killed in the crash.

On July 9, 1973, AVEMCO filed this action against the executrix of Dr. Chung's estate seeking a declaratory judgment based on two counts: (1) that the policy issued on December 16, 1972, is void because of certain material misrepresentations made by Dr. Chung in his application, and (2) that there is no coverage under the policy because Dr. Chung did not have a valid and effective medical certificate at the time of the crash. The survivors of the five deceased passengers intervened in this action as parties defendant on September 5, 1973.

Now before this court are AVEMCO's motion for summary judgment on count two, intervenors' motion for summary judgment on count two, and defendant's motion for partial summary judgment as to liability on both count one and count two.

COUNT TWO—*Motions of All Parties*

AVEMCO's motion for summary judgment and its disclaimer of liability under the policy is based on Item 7 of the DECLARATIONS which states:

"Item 7. PILOTS: This policy applies when the aircraft is in flight, only while being operated by one of the following pilots, while such pilot is holding a valid and effective Pilot and Medical Certificate:

(a) Robert C. H. Chung

\*    \*    \*    \*    \*    \*

[x] (c) Any Certified Flight Instructor."

Plaintiff argues that Dr. Chung's medical certificate expired on February 29, 1972, more than a year before the crash, and therefore, under the mandate of Item 7, the policy coverage was suspended and not in effect at the time of the crash. On the other hand, defendant and intervenors argue that Item 7 is no more than a representation or condition on coverage, and therefore, even if Dr. Chung did not have a valid and effective medical certificate at the time of the crash, coverage under the policy should be upheld unless Dr. Chung's breach of this representation or condition materially contributed to the accident.

*Facts*

From the depositions, affidavits and exhibits of the several parties the court finds these facts, solely for the purpose of the instant motions, to be uncontradicted:

1. *The 1972 Insurance Policy*

AVEMCO had issued its Aircraft Policy No. AV 1–016286 for the policy period of December 16, 1972 to December 16, 1973 to Dr. Robert C. H. Chung as named insured, with coverage, inter alia, under "A] Liability (Including Occu-

---

1. AVEMCO continued Dr. Chung's insurance coverage by re-issuing a new policy for the 1968–69 policy year, granting renewals on the 1968–69 policy for the 1969–70 and 1970–71 policy years, and re-issuing new policies for the 1971–72 and 1972–73 policy years. This last policy covered the period from December 16, 1972 to and including December 16, 1973.

pants) Bodily Injury & Property Damage" on the Beech G–50 aircraft (piloted by Chung while "in flight", as defined by the policy).

The policy as delivered to Dr. Chung, was made up as follows:

At the top thereof was a printed sheet headed AVEMCO INSURANCE COMPANY and stating that the company * * *

"agrees with the insured named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:"

and thereafter was printed the INSURING AGREEMENTS. The AGREEMENTS were followed on the second page by printed EXCLUSIONS. The EXCLUSIONS state that the policy does not apply

"(f) Under Coverages A, B and C to any aircraft, while in flight, (1) not bearing a valid 'Standard' Airworthiness Category Certificate * * * or (2) operated by a Student Pilot carrying passenger(s) * * *."

Immediately below the EXCLUSIONS were the printed DEFINITIONS. The third sheet was headed DECLARATIONS. Appearing thereon, by item number, was the information above referred to under COUNT TWO—Item 7, *supra.*

Following the DECLARATIONS sheet is an "endorsement" entitled GUARANTEED RENEWABLE, whereby the company guaranteed that it would renew the policy for five years from the original effective date (in this case December 1967). Among other terms of renewal thereon was stated: "This guarantee . . . terminates in the event that: . . .

B. (2) During the guarantee period, any pilot named in the policy * * * (b) Does not maintain a valid Medical Certificate."

(The only two times that any reference is made anywhere in the policy to "a

valid Medical Certificate" appears, as above indicated, on the Declarations and Renewal sheets.)

The following page of the policy was concerned with an endorsement providing All Risks coverage for the destruction of the plane itself. The next page was headed "Insert Declarations page here. Attach Endorsements, if any, to top back of Declarations." Below this appear the printed CONDITIONS covering limits of liability, actions against the company, assistance and cooperation of the insured, notices, etc. Number 22, the last "condition" reads:

"Declarations—All Coverages

By acceptance of this policy the named insured agrees that the statements in the application and declarations are his representations and agreements that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its representatives relating to this insurance."

It is to be noted that nowhere in the EXCLUSIONS section of the policy is there a specific exclusion of coverage to the named insured, as a pilot operating the aircraft in flight without a valid Medical Certificate.

Also to be noted is that the DECLARATIONS sheet of the policy is the only section thereof containing any typewritten entries.

2. *The Applications for Insurance*

In Dr. Chung's original application for insurance dated December 17, 1967, there was no request, printed or otherwise, on the application for any information regarding his possession of a Medical Certificate. The insurance company issued the first policy solely upon his statement in the application that he had a private pilot's license, had ratings for S&ME, had 110 hours piloting the Beech G–50, had 120 hours pilot experience in multi-engine craft, and had a total flying time of 600 hours with no accidents or suspensions. In effecting his

renewals of December 1968, 1969 and 1970, Dr. Chung returned the renewal forms without providing any information on the spaces provided therefor, or even signing the forms—nevertheless, upon payment of premium, the policy was renewed by AVEMCO.

In 1971 Dr. Chung filled out the application blanks as requested, showing, inter alia, that he was 46 years old, had a private license, 300 hours in the "Below Model", 350 hours in "Retract Gear" craft, 300 hours in multi-engine craft and a total of 1100 hours flight and 50 hours flight time in the preceding 12 months. On his 1972 application he again reported his age as 46, that he had a private license with 250 hours in "Below Model", 300 hours in "Retract Gear" aircraft, 250 hours in multi-engine craft, 1200 hours total flight time and 50 hours flight time during the preceding year.

Prior to the issuance of the 1971 policy, the AVEMCO policy contained no reference either in the DECLARATIONS or the GUARANTEED RENEWABLE page thereof, to any "valid Medical Certificate." These words were first inserted with the 1971 policy.[2] Nowhere in either the 1971, 1972 or 1973 applications for renewal, however, was there any request for information concerning a Medical Certificate.

AVEMCO's executive vice-president, David Jensen, stated, in deposition, that in issuing the renewal policies for the years 1968, 1969 and 1970, AVEMCO relied on nothing more than the original information supplied by Dr. Chung in 1967. He also stated that in his judgment as underwriting officer for AVEMCO, the 1969 information did not furnish sufficient information upon which to issue a renewal policy; that AVEMCO had no information in its records in the renewal years of 1968, 1969 and 1970 to indicate whether or not Dr. Chung had a currently effective pilot's certificate and/or medical certificate.[3]

For the renewal years of 1971 and 1972, as set out above, the information provided by Dr. Chung was obviously inconsistent as to age, hours flown, etc. Jensen stated, in response to the following question (deposition, Sept. 26, 1973, pp. 19–20):

"Q Do you consider the prime factor supporting the judgment not to require more information was the fact that Dr. Chung was paying his premium as requested, and you had no evidence of any crashes or accidents during those years?

"A True."

The only inference that can be drawn therefrom is that the evaluation of Dr. Chung as an insurable risk when the renewal applications were sent in was superficial—if any evaluation was given to any factors save the payment of the premium, with no evidence of any crashes or accidents during the preceding years. AVEMCO assumed that when Dr. Chung on his application indicated that he had a private license that he also had a current Medical Certificate.[4] It was not AVEMCO's policy to make any check regarding a valid Medical Certificate at the time it issued or renewed a policy. When any loss was reported, however, one of the first steps taken by AVEMCO was to determine the existence of a valid Medical Certificate.[5]

### 3. *Dr. Chung's Medical Certificate*

As authorized by the Federal Aviation Act of 1958 (49 U.S.C. 1301 et seq.), the

---

2. Jensen deposition, September 25, 1973, p. 42.

There is a strong inference that the change resulted from Judge Kilkenny's decision in Royal Indemnity Co. v. John F. Cawrse Lumber Co., 245 F.Supp. 707 (D. Or.1965), discussed *infra*.

3. Jensen deposition, September 25, 1973, pp. 29, 31, 55.

4. Jensen deposition, September 25, 1973, p. 43.

5. Deposition of J. A. Shrout, Vice-President, Claims, for AVEMCO, September 26, 1973, p. 29.

Federal Aviation Regulation (FAR), Parts 61.3(a) and (c) provide:

(a) *Pilot certificate.* No person may act as a pilot in command or in any other capacity as a required pilot flight crewmember of a civil aircraft of U.S. registry unless he has in his personal possession a current pilot certificate issued to him under this part. * * *

*  *  *  *  *  *

(c) *Medical certificate.* Except for glider pilots piloting gliders, no person may act as pilot in command or in any other capacity as a required pilot flight crewmember of an aircraft under a certificate issued to him under this part, unless he has in his personal possession an appropriate current medical certificate issued under Part 67 of this chapter. * * *

At the time Chung's plane crashed, Chung held a pilot certificate. It is not necessary for the purpose of this decision to determine whether or not that certificate was "valid" if he did not have in his personal possession at that time, in flight, a current medical certificate.

The records of the Federal Aviation Agency (FAA) show that the last medical certificate issued to Chung was dated February 25, 1970, and expired on February 29, 1972. No subsequent medical certificate issued to Chung is to be found in the FAA records. The FAA pursuant to FAR, Part 67, designated certain medical doctors as aviation medical examiners. During all or part of the period between January 1, 1970 to and including May 20, 1973, 47 physicians had been designated as examiners for Hawaii. Forty-five of the 46 now living have stated by affidavit that they had issued no medical certificate for Dr.

Chung during the above period. One, Dr. Cesar B. DeJesus examined Dr. Chung on February 25, 1970. None of the defendants or intervenors have proffered any evidence whatsoever of the existence of any medical certificate issued to Chung after that date. The court therefore must find, solely for the purpose of the instant motions, that Dr. Chung did not have in his personal possession a valid medical certificate at the time of the crash and his death.[6] Defendant's "argument" that Dr. Chung might have examined himself is frivolous.

THE LAW

It is now almost axiomatic under Hawaiian law that aircraft insurance policies, like all others, must be construed as liberally as possible in the insured's interest and as strictly as possible against the insurer, where a policy provision excludes or purports to exclude areas from coverage.[7] Forfeiture of insurance coverage is so disfavored that the courts are "always prompt to seize hold of any circumstance to uphold the validity of a policy." Colburn v. United States Fidelity & Guaranty Co., *supra,* 25 Haw. note 7, at 543; Pang v. Sun Life Assurance Co. of Canada, *supra,* 37 Haw. note 7. While an interpretation in favor of an insured has to be no more than one which in itself is not unreasonable,[8] the court must respect the plain terms of a contract by not creating any ambiguity where none exists.[9]

In the context of the entire policy it does not appear to this court that Item 7 is so clear and unequivocal as to constitute a specific exclusion on coverage, as claimed by the plaintiff. First of all it is not referred to in any manner in the EXCLUSIONS section of

**6.** Rule 56(e), F.R.Civ.P.; Wright & Miller, Fed.Prac. & Proc., Vol. 10, § 2739, p. 716.

**7.** Mason v. National Flood Insurers Assn., 361 F.Supp. 939 (D.Haw.1973); First Ins. Co. of Hawaii v. Continental Casualty Co., 466 F.2d 807 (9th Cir. 1972); Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970); Pang v. Sun Life Assurance Co. of Canada,

37 Haw. 208 (1945); Colburn v. United States Fidelity & Guaranty Co., 25 Haw. 536 (1920).

**8.** Insurance Co. of N. America v. Maurer, 505 S.W.2d 931, 933 (Tex.Civ.App.1974).

**9.** Yoshida v. Liberty Mutual Ins. Co., 240 F. 2d 824, 826–827 (9th Cir. 1957).

the policy. By contrast, it would appear that in each and every one of the cases cited by the plaintiff,[10] and construing in some cases exactly the same words, the purported exclusionary words of Item 7 were in fact either referred to specifically or included by specific reference in the EXCLUSIONS section of each policy in question.[11]

That in this policy Item 7 was not so referred to in its EXCLUSIONS immediately forecloses plaintiff's argument that Item 7 specifically excludes coverage in the instant case. If AVEMCO intended it to be an *exclusion* of coverage, it should have been referred to with the same specificity that characterized "in flight" operation of the aircraft without an FAA Airworthiness Certificate or by a student pilot carrying passengers under EXCLUSIONS (f), *supra.*[12] As stated, *supra*, such exclusionary specificity was present in the other aviation policies referred to in note 10, *supra*. This fact, plus the placement of Item 7 in the DECLARATIONS section and with no other reference to the medical certificate contained in the policy save in the GUARANTEED RENEWABLE endorsement does but add more weight to the conclusion reached above that Item 7 cannot be construed as an "exclusion."

It becomes unclear, therefore, exactly what Item 7 must be denominated for insuring purposes. This uncertainty is augmented by Paragraph 22 of the CONDITIONS, *supra*, viz.:

"By acceptance of this policy the named insured agrees that the *statements in the application and declarations are his representations and agreements*, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its representatives to this insurance." (Emphasis added.)

CONDITION 22 therefore, immediately makes the provisions of §§ 431–419, H.R. S., applicable to the "representations" aspects of both plaintiff and defendant's arguments:

"All statements or descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. A misrepresentation, unless it was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer, shall not prevent a recovery on the policy."

As indicated above, there were no statements of Dr. Chung in the application or in the typewritten portion of the DECLARATIONS section concerning his possession of a medical certificate. All he ever represented was that he had a pilot certificate, and this representa-

10. *National Ins. Underwriters, Inc. v. Bequette*, 280 F.Supp. 842 (D.Alaska 1968), aff'd, 429 F.2d 896 (9th Cir. 1970) ; *Electron Mach. Corp. v. American Mercury Ins. Co.*, 297 F.2d 212 (5th Cir. 1961) ; *Underwriters at Lloyd's of London v. Cordova Airlines*, 283 F.2d 659 (9th Cir. 1960) ; *Lineas Aereas Colombianas Exp. v. Travelers Fire I. Co.*, 257 F.2d 150 (5th Cir. 1958) ; *Globe Indemnity Co. v. Hansen*, 231 F.2d 895 (8th Cir. 1956) ; *Bruce v. Lumbermens Mut. Cas. Co.*, 222 F.2d 642 (4th Cir. 1955) ; *Roberts v. Underwriters at Lloyd's of London*, 195 F.Supp. 168 (D.C.Idaho 1961) ; *Powell Valley Electric Cooperative v. United States Aviation Underwriters*, 179 F.Supp. 616 (W.D.Va.1959) ; *Pacific Indemnity Co. v.*

*Kohlhase*, 9 Ariz.App. 595, 455 P.2d 277 (1969) ; *Glades Flying Club v. American Aviation & Marine Ins. Co.*, 235 So.2d 18 (Fla.1970) ; *Federal Ins. Co. v. McNichols*, 77 So.2d 454 (Fla.1955) ; *Grigsby v. Houston Fire & Cas. Ins. Co.*, 113 Ga.App. 572, 148 S.E.2d 925 (1966) ; *Omaha Sky Divers Parachute Club v. Ranger Ins. Co.*, 189 Neb. 610, 204 N.W.2d 162 (1973) ; *Baker v. Insurance Co. of N. America*, 10 N.C.App. 605, 179 S.E.2d 892 (1971).

11. *Cf. National Insurance Underwriters, Inc. v. Bequette, supra*, note 10.

12. *Cf. Gonsalves v. First Ins. Co. of Hawaii*, Haw., 516 P.2d 720 (1973).

tion is here not challenged by the defendants.

That there is a marked distinction between the two was fully analyzed and ruled upon by Judge Kilkenny in Royal Indemnity Co. v. John F. Cawrese Lumber Co., *supra,* note 2, where the insurer, in seeking a declaratory judgment of no coverage, relied upon an endorsement which provided:

> Pilots—This policy applies when the aircraft is in flight only while being operated by any pilot holding a valid and current Private or Commercial pilot· certificate.

It was undisputed that the pilot did not have a medical certificate at the time of the accident. The insured contended that a valid pilot certificate was all that was required under the express provisions of the endorsement. On the other hand, the insurer insisted that the language of the endorsement included, by implication, the requirement of the then applicable FAR[13] that no person may act as a pilot in command of an aircraft under a pilot certificate issued to him unless he has in his possession a current medical certificate; therefore, under the insurer's view, the absence of a medical certificate rendered the pilot certificate invalid. In finding coverage under the policy, the court held that in view of the distinction maintained throughout the FAA regulations between a current pilot certificate and current medical certificate, if the insurer had intended to require a current medical certificate as well as a pilot certificate, it should have specifically so stated.[14]

Whatever statements *Chung* may have made in the application and DECLARATIONS, of course, are but *his* representations and agreements. That the express wording of CONDITION 22 creates an ambiguity is obvious. Chung made no statement in any application or in the typewritten portions of the DECLARATIONS about a medical certificate. CONDITION 22 continues to say that the policy was issued in reliance upon the truth of Chung's statements. It therefore becomes uncertain whether each item in the DECLARATIONS must be classified as either a representation or an agreement, or whether a particular item, *e. g.,* Item 7, is to be considered as both a representation and an agreement. The language of Item 7 is conditional in nature and therefore indicates an agreement.

If Item 7 is considered an agreement, there nevertheless remains the question as to whether that agreement provides a condition precedent or subsequent on coverage.

AVEMCO admittedly, *supra,* was never concerned with whether or not Dr. Chung possessed a medical certificate. Its only apparent concern (and it seemed to have none during the renewal years 1968, 1969 and 1970) was whether or not Dr. Chung paid his premium and had a pilot's license. It was not until after the crash came that AVEMCO became concerned about his medical certificate.

Except as provided in the EXCLUSIONS, AVEMCO's policy was in full force and effect at all times as to Coverage C, viz., damage to the aircraft, and Coverage A, liability when not "in flight" as defined in the policy. Thus, for example, if, through the negligence of Dr. Chung, the plane had exploded just before he had started to move it forward in attempting to take off, Item 7 would have had no application. Thus Item 7 becomes a condition subsequent. As was said in Title Guaranty & Surety Co. v. Nichols, 224 U.S. 346, 351, 32 S. Ct. 475, 476, 56 L.Ed. 795 (1911):

> The coming into effect of a contract may be made to depend upon the hap-

---

13.  14 C.F.R. Sec. 61.3(a) 1963.

14.  It would appear from the decision that the endorsement covering the pilots, at issue, was in or incorporated in the specific exclusionary provisions of the Royal Indemnity policy.

pening or performance of a condition. But a condition subsequent presupposes a contract in effect which may be defeated by the happening or performance of a condition.

Having concluded that Item 7 can only be held to be a condition subsequent does not resolve all problems.

In Travelers Assn. v. Prinsen, 291 U. S. 576, 54 S.Ct. 502, 78 L.Ed. 999 (1934), under its life insurance policy the insurer was not liable if death occurred "when a member is participating . . . in the moving or transportation of . . . dynamite [caps] . . . ." *Id.* at 577–578, 54 S.Ct. at 502. Prinsen was an officer of the Western Powder Company and at the request of a customer rode in the customer's truck to his company's powder magazine, assisted in the loading of dynamite caps on the truck, and was riding back to his home office when the truck was hit by a railway engine. Prinsen was blown to pieces in the explosion which followed. Upon suit, the insurer defended on the ground that Prinsen was killed while participating in the transportation of explosives. *Id.* at 578–579, 54 S.Ct. 502. Mr. Justice Cardozo, for The Court, noted:

> Courts of high authority have held that in policies so phrased there is no need of any causal nexus between the injury or death and the forbidden forms of conduct. While the proscribed activity continues, the insurance is suspended as if it had never been in force. Other courts prefer the view that to work such a suspension, there must have been an aggravation of the hazard to which death or injury was owing (footnotes omitted). *Id.,* at 582, 54 S.Ct. at 504.[15]

As pointed out by Appleman, 6A Insurance Law and Practice (1972), Section 4146:

> Since the courts look with disfavor upon forfeitures, the trend of modern authority is to hold that there is no forfeiture if the breach of condition . . . did not contribute to the loss, or did not increase the risk at the time of the loss (footnote omitted). *Id.* at 439.

Appleman recognizes that some courts have rejected this liberal view of the effect of a breach of a condition. *Id.* at 442.

Circuit Judge Austin L. Staley in *LaPlace v. Sun Insurance Office, Ltd.,* 298 F.Supp. 764, 767 (D.C.V.I.1969), when faced with a not-too-dissimilar problem involving a condition providing for prompt notice of the accident stated:

> The trend in recent decisions, however, seems to be away from the classic contractual approach towards what this court thinks is a more realistic view of the problem. The terms of an insurance policy generally are not talked over or bargained for at arm's length; the insured is charged with the policy terms because he bought the policy, not necessarily because he read or understood its terms. It must also be pointed out that what is involved here is an attempt by the insurer to forfeit the insured's coverage. The court thinks it unreasonable to allow a carrier to deny its coverage even though its position was not substantially affected by the fact that it was not promptly notified of the accident or loss. This would not only be unfair to the insured, but would be against the public interest as well.

There seems to be no recent Hawaii decision squarely in point on the effect

---

15. Mr. Justice Cardozo continued by stating that under the circumstances of the *Prinsen* case there was no need to choose between the two lines of decision because under either ruling, the policy beneficiaries were precluded from recovery because even if the second view were accepted as applicable law, "it is still clear beyond debate that the effect of the forbidden act was to . . . aggravate the danger in the very event that happened." 291 U.S. at 583, 54 S.Ct. at 504.

on coverage of the breach of a condition subsequent.[16]

The "literal" rule of construction of insurance policies is no longer the law in Hawaii. Rather, the Hawaii courts of recent years have developed a solid policy of ruling against the forfeiture of insurance coverage in the absence of specific exclusions, or fraud, or other serious dereliction on the part of the insured, if such conclusion is not patently unreasonable. This court would hold that the law in Hawaii now stands in accord with the modern trend in requiring that insurance coverage be upheld unless the insured's breach of a condition subsequent can be shown to have contributed to the loss or in fact made the insurer's risk more hazardous.[17] As this court sees it, the present Hawaii law is in accord with that expressed in Cooper v. Government Employees Ins. Co., 51 N.J. 86, 237 A.2d 870, 873–874 (1968):

> [T]o deny the insured the very thing paid for . . . even though there is no likelihood that [the insurer] was prejudiced by the breach . . . would be unfair to the insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end, companies are franchised to sell coverage. We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld.

There is nothing in the record before this court to indicate the cause of the crash. There has been no showing as to whether or not the state of health of Dr. Chung at the time of the crash had any causative effect upon it. Since this court can only construe Item 7 as setting forth a condition subsequent upon coverage, for the reasons stated above, plaintiff's motion for summary judgment on Count Two must, therefore, be denied.

As indicated above, in its motion for summary judgment on Count Two plaintiff did not put in issue the state of Dr. Chung's health at the time of the accident. In its argument that Item 7 was a specific exclusionary clause, plaintiff was under no obligation to show any causal connection between Chung's breach of the provision and the accident or the risk insured. In the defendant's and intervenors' motions for summary judgment on Count Two, the state of Dr. Chung's health at the time of the accident has been put in issue. The court notes, however, that the defendant has refused to comply fully with plaintiff's attempts to obtain facts probative of Dr. Chung's health at the crucial time.[18] This court cannot, therefore, determine whether a genuine issue of fact exists thereon. Plaintiff must be given an opportunity for discovery to probe into defendant's contention of Dr. Chung's good health.

█ Moreover, this court feels that a genuine issue of fact may still exist as to whether Dr. Chung's failure to have a medical certificate made AVEMCO's risk more hazardous. Defendant has argued that AVEMCO has either waived or is estopped to assert the medical cer-

---

16. The court is aware of Choy Look See v. Royal Ins. Co., 14 Haw. 5 (1902) and Boardman v. Fireman's Fund Ins. Co., 14 Haw. 21 (1902). Both of these cases arose out of the burning of Honolulu's "Chinatown" in 1900 because of the bubonic plague. These two cases are not only factually distinguishable and on that basis not controlling, but the court notes that in the 72 years that have passed since those cases were decided, the law regarding the interpretation of insurance contracts has swung away from strict construction in favor of the insurance company contract to the opposite end of the pendulum arc, i. e., most liberal construction in favor of the insured.

17. Colburn v. United States Fidelity & Guaranty Co., *supra*, 25 Haw. 536, note 7. See also Section 431–419 H.R.S., *supra*; Standard Ins. Co. v. Haley, 282 F.Supp. 16, 24 (S.D.Iowa 1968).

18. See Defendant's Answers to Questions 20 and 21 in Plaintiff's Interrogatory to Defendant, and Letter from defendant's counsel to plaintiff's counsel, dated February 7, 1974, which is cited Plaintiff's Reply Memorandum, p. 5.

tificate condition to avoid coverage, on the basis that AVEMCO has waived its requirement of a valid and current medical certificate for Chung.[19] As shown above there was no information on any of Dr. Chung's renewal applications concerning a medical certificate. At no time, however, has AVEMCO ever expressly waived the requirement of a valid medical certificate. CONDITION 17 of the policy entitled "Changes—All Coverages" clearly states that notice or knowledge possessed by any agent of the company does not act as a waiver or estoppel to foreclose the company from asserting any right under the policy. CONDITION 17 also provides that none of the terms of the policy shall be waived or changed except by endorsement in the policy. This court can only conclude, however, that AVEMCO did not waive its requirement of proper medical certification in Dr. Chung's case nor is it estopped from raising that issue.

For the above reasons, defendant's and intervenors' respective motions for summary judgment on Count Two are denied.

COUNT ONE—*Defendant's Motion for Summary Judgment*

Plaintiff alleges, in Count One, that Dr. Chung made certain misrepresentations of fact which were material to its acceptance of the risk and the hazard assumed under the policy. Defendant, in moving for summary judgment on Count One, argues that plaintiff has waived its rights to rely upon Dr. Chung's misrepresentations as to his age and flying experience found in his 1972 renewal application. While the undisputed evidence indicates that plaintiff may have waived its right to rely on these items in its policy renewals in 1968, 1969 and 1970, this court feels there are genuine issues regarding (1) the materiality of these misrepresentations, if any, made in Dr. Chung's 1972 renewal application and (2) plaintiff's alleged waiver of its right to rely upon Dr. Chung's representations of fact in issuing the policy. Accordingly, defendant's motion for summary judgment on Count One is denied.

19. Defendant raised this argument of waiver and estoppel within the context of her urging that Item 7 should be construed as a representation, and not as an exclusionary clause. This court interprets defendant's argument as being applicable to the breach of a condition as well.