Dean S. EDMONDS, Jr., Plaintiff,

v.

UNITED STATES of America, Massachusetts Port Authority, and Avemco Insurance Company, Defendants.

Civ. A. No. 79–540–G.

United States District Court,
D. Massachusetts,

July 7, 1980.

Thayer Fremont-Smith, Choate, Hall & Stewart, Boston, Mass., for Dean S. Edmonds, Jr.

James P. Whitters, III, Gaston Snow & Ely Bartlett, Franklin N. Cunningham, Boston, Mass., Robert W. King, Washington, D. C., for Mass. Port.

## MEMORANDUM AND SUMMARY JUDGMENT FOR DEFENDANT AVEMCO

GARRITY, District Judge.

This action arises out of an accident involving the plaintiff's airplane at Hanscom Field, Bedford, Massachusetts, on January 14, 1978. Plaintiff brought suit against the Massachusetts Port Authority alleging negligence in maintaining the airfield, and against the United States, alleging negligence on the part of Federal Aviation Administration (FAA) employees in failing to warn of hazardous conditions on the runway. Plaintiff also joined as defendant his insurance company, Avemco Insurance Company, alleging that Avemco breached its contract of insurance when it denied coverage over this accident. Avemco de-

fended, and has moved for summary judgment, on the ground that at the time of the accident Edmonds had not completed a current biennial flight review as required under the terms of his policy. Only Avemco's motion for summary judgment is before us now. We received memoranda and heard oral argument. For the reasons stated herein, Avemco's motion is granted.

### Modification of Policy Terms

■ Because Edmonds' accident occurred in the course of a landing at Hanscom Field, the aircraft was "in flight" for purposes of determining coverage and exclusions from coverage under the insurance policy between plaintiff and Avemco. Item 7 of the policy declarations contains the disputed clause that is the subject of this motion. In relevant part Item 7 provides:

> This policy applies when the aircraft is in flight, only while being operated by [the named insured] who (1) holds a valid and effective Pilot and Medical Certificate, (2) has a current biennial flight review . . . .[1]

In addition, the "Exclusions" section of the policy states that none of the three possible forms of coverage shall apply to an aircraft "being operated by a pilot not meeting the requirements set forth in Item 7 of the declarations." Exclusion (g)(3).

When Edmonds first applied for coverage by Avemco in 1974, Item 7 of the policy did not include the biennial flight review requirement. Item 7 in the original policy only required a valid Pilot and Medical certificate, and the Exclusions section of the policy made no mention of the consequence of failing to comply with Item 7. It was not until 1975, on the first year renewal form, that biennial flight review was first mentioned. In a box provided on the form, plaintiff was asked to check off whether he had a current biennial flight review and a current medical certificate. Plaintiff checked off that he did, the policy was renewed, and a new set of declarations was sent to plaintiff, this time containing the amended Item 7, as quoted *ante*. Each year for three years thereafter plaintiff received a renewal form that asked about his current flight review and, each time, upon renewal, he was mailed a page of declarations containing Item 7 as it appears in the current policy.

Turning to the interpretation of the contract, we reject at the outset plaintiff's initial proposition that he is not bound by any term in Item 7 that was added after he negotiated the original policy in 1974. It is true, of course, that an insured will not be bound by modifications in his policy as to which he has no notice nor gave his consent. *See Prudential Insurance Co. of America v. Clauson*, 1 Cir. 1961, 296 F.2d 76. But on the circumstances here presented the plaintiff cannot take advantage of that rule in this case.

■ The original policy contained a "Guaranteed Renewable" endorsement which stated:

> The continuation of the insurance for the guarantee period shall be through the renewal thereof in accordance with the policy forms, rules, rates and rating plans in use by the Company *at that time*.[2] (emphasis added).

That clause had the effect of reserving to Avemco the right to modify the policy by imposing reasonable additional terms that would take effect when the policy was renewed. In exchange for Avemco's guarantee that the policy would be renewed and that the right to cancel would be limited, plaintiff agreed, by accepting the endorsement to the original policy, that renewal

---

1. An additional requirement, not here relevant, relates to the pilot's recent experience in taking off and landing.

2. Plaintiff points out a potential ambiguity contained in another sentence in the same endorsement. That sentence reads: "The Company guarantees to insure the Named Insured during the guarantee period for the coverages and limits provided *by this policy*." (emphasis added). We read that sentence as merely a preamble to the several paragraphs and subparagraphs of qualifying language that follow. It serves only to state the general condition that Avemco guarantees renewal; it imparts no special significance to the words: "this policy."

would be subject to whatever rules and rates might be in effect at the time of renewal.

When Avemco added to Item 7 the requirement that the insured pilot have a current biennial flight review, it added, in our view, a reasonable additional term clearly contemplated by the terms of the renewal endorsement just cited. Under FAA regulations, which came into effect after plaintiff negotiated the original policy, no pilot can command an aircraft unless he has undergone a biennial flight review as defined by the regulations. 14 C.F.R. § 61.57.[3] In amending the policy Avemco merely brought up to date a generic "Pilot" clause in the policy, Item 7, which summarizes the minimum health and competency standards to which every pilot is held by law. The additional term required nothing more of Edmonds than what he was already required to do under FAA regulation 61.57.

On each application for renewal plaintiff was asked to make only three declarations—one of them was whether or not he had a current biennial flight review. Three times he read the question and answered yes (the last time, incorrectly). He can hardly argue now that he had no notice that Avemco had made a current flight review an important term of the renewed coverage. And by assenting to the Guaranteed Renewable endorsement in the original policy, he reserved to Avemco the right to add just such a term to the declarations to take effect at the time of renewal. Accordingly Edmonds was bound by the conditions in Item 7 as they appeared in the 1977 policy of insurance, and thus by the requirement that he have a current biennial flight review.

### Compliance with Policy Terms

■ The question next presented is whether at the time of the accident plain-

tiff was in compliance with the essential terms of Item 7. He has admitted that he had not technically complied with FAA regulations respecting flight review; but argues that on two particular flights he accomplished all the maneuvers required in a flight review and more difficult maneuvers as well. In support of this assertion he submitted a letter from Gary C. Brigham, an employee of Beech Aircraft, who made two test flights with him in planes of more sophisticated design than the plane involved in the accident. In a letter dated June 28, 1978, Brigham stated that Edmonds had:

> executed all the emergency procedures which are used to evaluate a pilot in a biennial flight review and, in addition, he executed procedures considerably more complicated than those required in a biennial flight review.

Although plaintiff's counsel represented that Brigham was certified to instruct (and hence to conduct flight reviews) on single engine aircraft, he was not certified to instruct on twin engine planes, the type plane that Edmonds flew and that his insurance policy covered. Therefore, even if Edmonds had asked to be reviewed, Brigham could not have certified Edmonds as having accomplished a flight review for twin engine planes. Moreover, the flights with Brigham were nothing more than demonstrator flights, presumably in connection with a possible sale. Neither man mentioned biennial flight reviews, no endorsement was entered in the log book, and it only occurred to plaintiff some weeks later that, if Brigham were qualified to give flight reviews, plaintiff would ask him to enter those flights in his log book as satisfying the biennial flight review.

Thus it is apparent that plaintiff did not have a current biennial flight review, that the Brigham test flights were not a satis-

---

**3.** Section 61.57(a) provides:

(a) *Flight review.* After November 1, 1974, no person may act as pilot in command of an aircraft unless, within the preceding 24 months, he has—

(1) Accomplished a flight review given to him, in an aircraft for which he is rated, by

an appropriately certificated instructor or other person designated by the Administrator; and

(2) Had his log book endorsed by the person who gave him the review certifying that he has satisfactorily accomplished the flight review.

factory substitute, and that plaintiff was in breach of a condition in Item 7 of the policy. To permit plaintiff to substitute, for the technical requirements of the regulations, an after-the-fact evaluation of a pilot not certified to give flight reviews, based on flight maneuvers during a sales demonstration flight in a different style of airplane, would read the pilot competency provisions right out of the FAA regulations and Item 7 out of the policy of insurance.

### Characterization of Policy Terms

█ The final, and more difficult, question presented is whether failure to comply with Item 7 voids Avemco's obligations under the policy. If the conditions in Item 7 are conditions precedent, as the defendant construes them, then coverage will be avoided whether or not the breach in fact contributed to the accident. *See Lopardi v. John Hancock Mutual Life Ins. Co.*, 1935, 289 Mass. 492, 194 N.E. 706; *Everson v. General Accident & Assur. Co.*, 1909, 202 Mass. 169, 88 N.E. 658. If, on the other hand, the conditions are conditions subsequent or are forfeiture provisions, coverage will be avoided only if the breach contributed to the accident or increased the insurer's risk of loss. *See* M.G.L. c. 175, § 186; *Charles, Henry & Crowley Co. v. Home Insurance Co.*, 1965, 349 Mass. 723, 212 N.E.2d 240.

█ We apply the following two tests to determine which conditions are conditions precedent:

[A] statement made in an application for a policy of insurance may become a condition of the policy rather than remain a warranty or representation if: (1) the statement made by the insured relates essentially to the insurer's intelligent decision to issue the policy; and (2) the statement is made a condition precedent to recovery under the policy either by using the precise words "condition precedent" or their equivalent. .

*Charles, Henry & Crowley, Co., supra*, 349 Mass. at 726, 212 N.E.2d at 242.

█ Both tests are met in the instant case. As we have already noted, Item 7 essentially restates the minimum standards of experience and certification required of all pilots by the FAA. Compare Item 7 with 14 C.F.R. part 61, subpart A, generally, and § 61.57(a)–(c). It seems essential to Avemco's "intelligent decision to issue the policy" that the insured pilot meet a minimum standard of flying ability. Had plaintiff attempted to complete an official flight review and failed, Avemco would probably not have renewed his policy. Also we think it reasonable for defendant to require that only a formal biennial flight review would satisfy the terms of Item 7.

By requiring a formal, FAA designated biennial flight review, Avemco accomplishes several things. It avoids having to design its own independent test of an insured pilot's competence; it is assured that the pilot who examines the insured is certified by the FAA as competent to instruct and to review; and it imposes on the pilot and itself the least administrative burden possible—to be eligible for renewed coverage the insured pilot need only show that he has passed a flight review that he is required by FAA regulations to have passed anyway. Moreover, by insisting on an FAA determined standard as evidence of competence, Avemco protects its position as subrogee on any claim of the pilot it pays out on. The violation of a regulation designed to promote safety can be used in a lawsuit as evidence of negligence. As defense counsel noted in his memorandum, Avemco's codefendants plan to offer Edmonds' failure to complete a current flight review as evidence of his contributory negligence. This might well affect a cross claim by Avemco against its codefendants United States and the Massachusetts Port Authority if Avemco were to be held liable to the plaintiff; and it may explain why Avemco might insist on technical compliance with the law when it decides which pilots it will insure.

For these reasons we hold that the first of the above-quoted two tests is satisfied—the biennial flight review requirement contained in Item 7 is a term that relates essentially to Avemco's decision to issue or renew a policy. The provisions of this poli-

cy qualify as conditions precedent under the second test as well. Item 7 states that the policy applies only while the aircraft is operated by a pilot who has, *inter alia*, a current biennial flight review. Item 7 in turn is specifically made the subject of an exclusion. Under Exclusion (g)(3), none of the three forms of coverage applies to an aircraft "being operated by a pilot not meeting the requirements set forth in Item 7 of the declarations." Thus, while not actually denominated a condition precedent, Item .7, when read with the section on exclusions, states the equivalent of "condition precedent" for the purposes of the two part test.

The case of *Avemco Insurance Co. v. Chung*, D.Hawaii, 1975, 388 F.Supp. 142, relied upon by plaintiff, does not persuade us otherwise. That case involved the same insurance company and a similarly worded Item 7, although at issue there was the pilot's lack of a valid medical certificate. The court (following what the plaintiff here describes as the "modern trend") concluded that in the context of the whole policy, Item 7 did not constitute a specific exclusion of coverage. But what was missing from Avemco's policy in *Chung* has specifically been included in Avemco's policy with plaintiff, namely, an exclusions section that expressly lists Item 7 as an item triggering exclusion from coverage. Primarily because it was not listed as an exclusion in the *Chung* policy, the court there held, at 388 F.Supp. 148, that Avemco must not have intended that it be given exclusionary effect.

In a post-hearing filing the plaintiff briefed three additional cases, from other jurisdictions, involving exclusions from coverage in aviation policies. All three cases are persuasive on their facts in supporting plaintiff's general position that, under certain circumstances, policy declarations should be read as forfeiture provisions, not conditions precedent. But we find important differences between the case at bar and those briefed by the plaintiff. Those differences, keeping in mind the rule in Massachusetts as stated by the SJC in *Charles, Henry & Crowley*, support the conclusion we reach here.

For example, in *Benton Casing Service Inc. v. Avemco Insurance Co.*, La.App., 366 So.2d 938, La.1979, 15 Avi. 17, 814, the policy contained an obvious ambiguity when the pilot exclusion clause was construed with the liability coverage provisions of the policy. The court noted that although certain declarations had specifically been made the subject of an exclusion (including loss of pilot's certification), the particular declaration the pilot had breached did not appear in the exclusion section. Applying Louisiana's "anti-technical" statute, the ambiguity was construed against the insurer and the breach was held not to void coverage. By comparison, in the instant case we are satisfied that no such ambiguity exists. In our view, Edmonds' policy is explicit in incorporating the declarations made under Item 7 into the Exclusions section of the policy.

■ At best, the cases cited by plaintiff demonstrate there is no consensus among the states on this difficult, and perhaps evolving, point of law. In their opinions in *South Carolina Insurance Co. v. Collins*, 269 S.C. 282, 237 S.E.2d 358, S.C.1977, 14 Avi. 18,056, and *American States Insurance Co. v. Byerly Aviation, Inc.*, S.D.Ill.1978, 456 F.Supp. 967, also relied on by plaintiff, both courts acknowledged the existence of a substantial body of case law holding contrary to the positions they adopted. See, for example, *Arnold v. Globe Indemnity Co.*, 6 Cir. 1969, 416 F.2d 119; *National Insurance Underwriters Inc. v. Bequette*, D.Ala.1968, 280 F.Supp. 842, affirmed 9 Cir. 1970, 429 F.2d 896; and *Bruce v. Lumbermen's Mutual Casualty Co.*, 4 Cir. 1955, 222 F.2d 642, which state the rule that where an unambiguous exclusion is breached, the coverage is avoided whether or not the breach was the proximate cause of the accident. Whether or not out of the disparate authority relied upon by plaintiff there will emerge a modern trend, we feel constrained to apply the test devised by the highest court of this state.

Applying the two tests set out in *Charles, Henry & Crowley*, we hold that a current

biennial flight review was a condition precedent to coverage under plaintiff's policy with defendant Avemco. The two demonstration flights with Brigham, which plaintiff offers as the equivalent of a flight review, did not satisfy the condition stated in Item 7. Accordingly, Avemco's coverage over this accident was avoided and its motion for summary judgment on Count II of the complaint is granted.