Dean S. EDMONDS, Jr.,
Plaintiff-Appellant,

v.

UNITED STATES of America et al.,
Defendants-Appellees.*

No. 80–1613.

United States Court of Appeals,
First Circuit.

Argued Feb. 10, 1981.
Decided April 22, 1981.

* Editor's Note: The opinion of the United States Court of Appeals, Fifth Circuit in Cleveland Consolidated, Inc. v. Occupational Safety & Health Review Com., published in the advance sheets at this citation (642 F.2d 877), was withdrawn from bound volume at the request of the Court.

William Shaw McDermott, Boston, Mass., with whom Thayer Fremont-Smith and Choate, Hall & Stewart, Boston, Mass., were on brief, for plaintiff-appellant.

Franklin N. Cunningham, Boston, Mass., with whom Christopher E. Nolin, Boston, Mass., was on brief, for defendant-appellee Avemco Ins. Co.

Before COFFIN, Chief Judge, WINTER,* Circuit Judge, and SKINNER,** District Judge.

SKINNER, District Judge.

This is an appeal from an order of the District Court granting summary judgment for defendant-appellee Avemco Insurance Company ("Avemco") against plaintiff-appellant Dean S. Edmonds, Jr. We affirm the District Court's judgment, 492 F.Supp. 970.

The following facts are essentially undisputed. Edmonds is a licensed pilot who resides in Massachusetts. Avemco is an aircraft insurance company incorporated under the laws of Maryland with its princi-

* Of the Fourth Circuit sitting by designation.

** Of the District of Massachusetts sitting by designation.

pal place of business in Bethesda, Maryland. On May 14, 1974, Edmonds purchased a Beech Baron Aircraft. Avemco subsequently issued an aircraft insurance policy to Edmonds effective May 15, 1974 for a period of one year ("1974–75 policy"). The 1974–75 policy insured Edmonds against personal injury and property damage while operating the aircraft. Item 7 of the "DECLARATIONS" section stated:

> PILOTS: This policy applies when the aircraft is in flight, only while being operated by one of the following pilots, while such pilot is holding a valid and effective Pilot and Medical Certificate:
> (a) Dean S. Edmonds . . . .

The 1974–75 policy also contained a section entitled "EXCLUSIONS" and one entitled "CONDITIONS". Neither section set out a requirement that Edmonds undergo a periodic review of his piloting skills in order to qualify for coverage.

In 1974 the Federal Aviation Administration [FAA] amended Part 61 of the Federal Air Regulations by inserting therein § 61.57, 14 C.F.R. § 61.57 (1980), which provides, in part:

> § 61.57 Recent Flight experience:
> Pilot in command.
> (a) *Flight Review.* After November 1, 1974, no person may act as pilot in command of an aircraft unless, within the preceding 24 months, he has—
>
> (1) Accomplished a flight review given to him, in an aircraft for which he is rated, by an appropriately certified instructor or other person designated by the Administrator; and
> (2) Had his log book endorsed by the person who gave him the review certifying that he has satisfactorily accomplished the flight review.

Edmonds successfully completed a biennial flight review under the supervision of an FAA-certified instructor on November 24, 1974.

Prior to the expiration date of the 1974–75 policy, Avemco sent Edmonds an "Aircraft Policy Renewal Information" form ("policy renewal form"). The form stated, in part:

> Your present AVEMCO Aircraft Insurance Policy expires on the date indicated. So that we may serve you better and have current information on both your aircraft and flying experience, please take a moment to complete and return this postage paid card. As soon as we receive this completed form, we will immediately send you our renewal quotation for your consideration.
>
> Note: If you do not return this completed card within 10 days, we will forward our renewal quotation based upon your estimates of flying time and aircraft value from information in our files.
>
> DO ALL PILOTS HAVE:
> Current Biennial Flight Review
> ☐ Yes   ☐ No
> Current Medical Certificate
> ☐ Yes   ☐ No

Edmonds checked the box indicating that he had a current biennial flight review and mailed the form to Avemco, which issued Edmonds a renewal policy for the term May 15, 1975 to May 15, 1976 ("1975–76 policy"). Edmonds later received a new "DECLARATIONS" section. Item 7 of that section had been amended to read:

> Item 7. PILOTS: This policy applies when the aircraft is in flight, only while being operated by one of the following pilots (indicated by [X] below) who, (1) holds a valid and effective Pilot and Medical Certificate, (2) has a current biennial flight review and (3) if carrying passengers, has completed at least three Take-Offs and Landings within the preceding 90 days in an aircraft of the same make and model as the insured aircraft.

In March of 1976, Avemco again sent Edmonds a policy renewal form. Edmonds replied that he had a current biennial flight review and mailed the form to Avemco, after which he received a renewal policy for the term May 15, 1976 to May 15, 1977 ("1976–77 policy").

This renewal procedure was repeated again the following year. Avemco sent Edmonds a policy renewal form in March of 1977. Edmonds indicated that he had a current biennial flight review and mailed the form back to Avemco. Avemco subsequently issued a renewal policy covering the period May 15, 1977 to May 15, 1978. ("1977–78 policy"). As with the previous two policies, Item 7 of the "DECLARATIONS" section provided that the 1977–78 policy "applies when the aircraft is in flight, only while being operated by one of the following pilots [Edmonds] . . . who . . . (2) has a current biennial flight review . . . ." The 1977–78 policy also contained a new provision in the "EXCLUSIONS" section:

This policy does not apply:

.     .     .     .     .

(g) Under Coverages A, B and C, to any aircraft while in flight

.     .     .     .     .

(3) being operated by a pilot not meeting the requirements set forth in item 7 of the declarations

. . . .

When Edmonds returned the policy renewal form to Avemco to obtain the 1977–78 policy, however, he did not have a current biennial flight review within the meaning of 14 C.F.R. § 61.57. His previous flight review took place on November 24, 1974, more than two years earlier. In 1977, Edmonds twice piloted an airplane accompanied by Gary Brigham, a demonstrator pilot employed by the Beech Air Company. Brigham later wrote to Avemco that Edmonds performed all of the maneuvers necessary to complete a biennial review during these flights. Brigham, however, was not an FAA-certified instructor, did not have authority to conduct biennial flight reviews, and did not enter his findings in Edmonds' log book.

On January 14, 1978, Edmonds had an accident at Hanscom Field in Bedford, Massachusetts. As he brought his plane down for a landing on Runway 23, it hit a mound of snow and crashed. The aircraft was extensively damaged. Edmonds promptly filed a claim under the 1977–78 policy. Avemco refused to honor his claim on the theory that by failing to maintain a current biennial flight review Edmonds breached a condition precedent to Avemco's contractual duty.

Edmonds then brought suit for damages against the United States, the Massachusetts Port Authority and Avemco. Count II, the only count before us on this appeal, alleged that Avemco breached its contract of insurance with Edmonds by refusing to cover the accident as required by the 1977–78 policy. Massachusetts law governs this claim since jurisdiction is based on diversity of citizenship.

In the proceedings below, the District Court granted Avemco's motion for summary judgment on Count II. The Court ruled that Edmonds was bound by Item 7 of the "DECLARATIONS", that Item 7 incorporated the federal regulatory standard for flight reviews, and that Edmonds did not comply with Item 7. The District Court then turned to what it perceived as the more difficult question: whether Edmonds' failure to comply with Item 7 voided Avemco's obligations under the policy. The Court noted that under Massachusetts law it was necessary to characterize Item 7 as either a condition precedent, in which case Avemco's obligation was terminated, or a warranty or representation, in which case coverage could be avoided only if the breach contributed to the accident or increased the insurer's risk of loss. M.G.L. c. 175, § 186. In the District Court's view, the standard for determining whether Item 7 is a condition precedent is set out in *Charles, Henry & Crowley Co. Inc. v. The Home Insurance Co.*, 349 Mass. 723, 726, 212 N.E.2d 240 (1965):

[A] statement made in an application for a policy of insurance may become a condition of the policy rather than remain a warranty or representation if: (1) the statement made by the insured relates essentially to the insurer's intelligent de-

cision to issue the policy; and (2) the statement is made a condition precedent to recovery under the policy, either by using the precise words "condition precedent" or their equivalent.

The Court found that both branches of the standard were met in the instant case and ruled that Item 7 was a condition precedent. It held, accordingly, that Edmonds' failure to comply with Item 7 prevented Avemco's duty of covering the accident from arising.

Edmonds' first contention on appeal is that the District Court incorrectly ruled that the term "current biennial flight review" in Item 7 of the "DECLARATIONS" incorporated by reference the federal regulatory requirements set out in 14 C.F.R. § 61.57. He argues that it is impossible to determine from the face of the contract whether the parties intended that all of the technical requirements of 14 C.F.R. § 61.57 apply and, therefore, that a genuine issue of material fact exists as to the meaning of Item 7.

■ Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court. *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786 (1970). The circumstances surrounding the making of the agreement must be examined to determine the objective intent of the parties. *Louis Stoico, Inc. v. Colonial Development Corp.*, 369 Mass. 898, 902, 343 N.E.2d 872 (1976). where the wording of the contract is unambiguous, the contract must be enforced according to its terms. *Freelander v. G. & K. Realty Corp.*, 357 Mass. at 516, 258 N.E.2d 786. It is only where the contract contains ambiguities that a question of fact for the jury is presented. *Trafton v. Custeau*, 338 Mass. 305, 307–08, 155 N.E.2d 159 (1959); *Gillentine v. McKeand*, 426 F.2d 717, 721 (1st Cir. 1970).

■ We hold that the District Court properly construed the term "current biennial flight review" as incorporating the federal regulatory standard. This term is un-

ambiguous. It was added to Avemco's standard aircraft policy shortly after the FAA adopted the biennial flight review requirement and tracks the exact language used in 14 C.F.R. § 61.57. Edmonds has offered no other plausible definition of "current biennial flight review". We thus have no doubt that the parties understood this term as requiring Edmonds to comply with 14 C.F.R. § 61.57.

Edmonds' second contention on appeal is that the District Court erred in ruling that Item 7 of the "DECLARATIONS" operated as a condition precedent to Avemco's contractual liability. This argument has two alternative branches. The first is that the District Court's reliance upon *Charles Henry & Crowley Co. Inc. v. The Home Insurance Co.*, supra [hereinafter, "*Charles*"], was misplaced. Rather, in Edmond's view, the Supreme Judicial Court's opinion in *Johnson Controls, Inc. v. Bowes*, —— Mass. ——, 1980 Mass.Adv.Sh. 1831, 409 N.E.2d 185 (1980), decided after the District Court granted summary judgment, is controlling and establishes that breach of a condition in an insurance policy avoids coverage only where the insurer shows that such breach increased the risk of loss or contributed to the accident.

At issue in *Charles* was the construction of a provision in a policy of insurance against theft. The insured, a jewelry firm, represented in its application for insurance that the maximum value of jewelry to be displayed in its store windows would be $15,000. Provision 1B of the policy stated: "It is a condition for this insurance precedent to any recovery hereunder that the values of property displayed will not exceed the amount represented . . . ." Subsequently, $13,620 worth of jewelry was stolen from the windows on a day in which over $19,000 worth of jewelry was on display. Arguing that the jeweler breached a condition precedent, the insurer refused to extend coverage. The Supreme Judicial Court noted that § 1B of the policy had to be characterized as either a condition precedent which would bar recovery if not com-

plied with or a representation or warranty which, if not fulfilled, would bar recovery only if the proof required by M.G.L. c. 175 § 186,[1] existed. Analyzing a long line of Massachusetts cases the Court enunciated a two-pronged standard for making this determination:

> [A] statement made in an application for a policy of insurance may become a condition of the policy rather than remain a warranty or representation if: (1) the statement made by the insured relates essentially to the insurer's intelligent decision to issue the policy; and (2) the statement is made a condition precedent to recovery under the policy, either by using the precise words "condition precedent" or their equivalent.

On the facts before it the Court concluded that § 1B constituted a condition precedent.

*Johnson Controls* involved a notice provision in a malpractice insurance policy. The provision required the insured, an attorney, immediately to notify the insurer of any malpractice lawsuit brought against him. The issue before the Court was whether the insured's failure to comply with the notice provision barred recovery regardless of lack of prejudice to the insurer. Rejecting a strict contractual approach, the court held that in order to avoid its obligations an insurance company must prove "both that the notice provision was in fact breached and that the breach resulted in prejudice to its position." The Court then decided, however, to apply its rule only to claims arising after the date of the opinion because to do otherwise "would disturb retroactively the contractual arrangements of the insurer and the insured . . . ." —— Mass. at —— ——, 1980 Mass.Adv.Sh. at 1835–36, 409 N.E.2d at 188.

■ We hold that the District Court properly looked to *Charles* to determine whether Item 7 constituted a condition

precedent. The insurance provision at issue in *Charles* and in this case are similar in one critical aspect: both relate to the insurer's initial decision to issue the policy and take the insurance risk. The notice provision in *Johnson Controls*, on the other hand, has no bearing on insurability; its purpose is to protect an insurance company's interests after a claim against the insured has arisen. While a standard based on prejudice to the insurer has merit in the latter situation, there is nothing in *Johnson Controls* to suggest that the Supreme Judicial Court meant to extend such a standard to provisions relating to the decision to insure. Moreover, *Johnson Controls* has prospective application only. Edmonds brought this case long before *Johnson Controls* was decided and would be foreclosed from relying on that decision even if it were on point.

Edmonds' alternative argument is that the District Court misapplied the *Charles* standard. In Edmonds' view, application of the two-pronged standard requires a court to make findings of fact. He contends that there is a genuine dispute of fact over the first part of the standard, *i. e.*, whether his representation in the policy renewal form that he had a current biennial flight review "relates essentially to the insurer's intelligent decision to issue the policy". Edmonds points out that the very same renewal form contained a notation stating that a quotation would be sent to Edmonds even if Avemco did not receive the form, which arguably supports an inference that the current biennial flight review requirement was not of central concern to Avemco. Edmonds argues, accordingly, that summary judgment on this issue was inappropriate. Edmonds further contends that the second prong of the *Charles* standard, whether there is language in the policy expressly making the statement a condition precedent, is not met because Avemco did not clearly indicate in Item 7 that failure to

---

1. "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrep-

resentation of warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

maintain a current biennial flight review would avoid Avemco's duties.

 The determination whether contractual language operates as a condition precedent or merely as a warranty of representation is a question of law for the court. *Shaw v. Commercial Insurance Co.*, 359 Mass. 601, 605, 270 N.E.2d 817 (1971). The first branch of the *Charles* standard does not require the court to determine whether the insurer would in fact have issued the insurance regardless of the false statement, as a question of fact. None of the Massachusetts cases employing this standard have considered evidence of the insurer's subjective state of mind. Rather, the Court has considered whether the contract term is properly categorized as a condition precedent as a matter of law because it has a reasonable bearing on the extent of the risk assumed by the insurer. *See Lopardi v. John Hancock Mutual Life Insurance Co.*, 289 Mass. 492, 194 N.E. 706 (1935); *Kravit v. United States Casualty Co.*, 278 Mass. 178, 179–80, 179 N.E. 399 (1932); *Faris v. The Travelers Indemnity Co.*, 278 Mass. 204, 179 N.E. 605 (1932); *Penta v. Home Fire & Marine Insurance Co.*, 263 Mass. 262, 160 N.E. 807 (1928).

We hold that the District Court properly applied the *Charles* standard to the aircraft insurance policy in this case. The first branch of the standard is satisfied because the biennial flight review requirement has a rational relationship to Avemco's decision to issue the policy.[2] As to the second branch, Item 7 explicitly states that the policy applies only while the aircraft is being operated by a pilot who has a current biennial flight review. Section (g)(3) of the "EXCLUSIONS" adds that the policy does not apply unless the insured complies with Item 7. Though the term "condition precedent" does not appear, we hold that the language that was used is the equivalent and, therefore, that the second part of the standard is satisfied. *See, e. g., Krause v. Equitable Life Insurance Co.*, 333 Mass. 200, 129 N.E.2d 617 (1955); *Massachusetts Mutual Life Insurance Co., v. Sullivan*, 5 Mass. App. 816, 361 N.E.2d 1321 (1977).

*Affirmed.*

---

**2.** We adopt the persuasive reasoning of the District Court (492 F.Supp. at 974).

> By requiring a formal, FAA designated biennial flight review, Avemco accomplishes several things. It avoids having to design its own independent test of an insured pilot's competence; it is assured that the pilot who examines the insured is certified by the FAA as competent to instruct and to review; and it imposes on the pilot and itself the least administrative burden possible—to be eligible for renewed coverage the insured pilot need only show that he has passed a flight review that he is required by FAA regulations to have passed anyway.