**SCHNEIDER LEASING, INC., Appellee,**

v.

**UNITED STATES AVIATION UNDER- WRITERS, INC. d/b/a Aviation Managers and d/b/a United States Aircraft Insurance Group, Appellant.**

No. 95–1414.

Supreme Court of Iowa.

Nov. 20, 1996.

Richard G. Santi and Paul D. Burns of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

Alan E. Fredregill of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

This is an action by the owner of an airplane to recover under the physical damage coverage of a policy of insurance issued by defendant, United States Aircraft Insurance Group (USAIG). The owner of the plane is the plaintiff, Schneider Leasing, Inc. (Schneider Leasing). Its claim is based on the loss of a twin-engine Beechcraft Baron airplane when that plane crashed shortly after taking off from the Fort Madison, Iowa, airport. USAIG contends that the loss is not covered because the plane was being operated by a pilot who lacked qualifications required by the policy as a condition for physical damage coverage to the aircraft. Based on that theory, it moved for summary judgment. The motion was denied by the district court. We granted permission to appeal in advance of final judgment.

After reviewing the record and considering the arguments of the parties, we conclude that the status of the pilot precluded physical damage coverage under USAIG's policy as written. However, for reasons that we will discuss, the present record presents a genuine issue of material fact concerning Schneider Leasing's claims of waiver and estoppel as to USAIG's policy defense. We therefore affirm the order denying summary judgment and remand the case to the district court for further proceedings.

### I. *Background.*

On June 11, 1993, a Beechcraft Baron twin-engine airplane owned by the plaintiff Schneider Leasing and insured by USAIG took off in good weather from the Fort Madison airport. Phillip Heimbecker, a Woodbury County sheriff's deputy, was the pilot. Another deputy, Jon Hermann, and Armondo Cardenas, a prisoner who was being transported by Heimbecker and Hermann from the prison in Fort Madison to Sioux City for a new trial, were also on board the plane. Shortly after takeoff, at an altitude of 100 feet, the aircraft rolled over and crashed. The aircraft was destroyed. Heimbecker and Hermann died in the crash. Cardenas was seriously injured. The cause of the crash is hotly disputed; various explanations offered include pilot error, mechanical malfunction, and interference by Cardenas, who had a morbid fear of flying. On August 10, 1993, Schneider Leasing submitted a proof of loss. USAIG refused payment, alleging that it was not liable because Heimbecker did not meet the minimum pilot experience and certification provisions contained in the policy.

The USAIG policy contained the following exclusion, under the heading "Limitations on Use":

> To be covered under this policy the aircraft must be owned, maintained or used only for the purpose shown on the Coverage Summary page and described below and *flown only by a pilot or pilots described on the Coverage Summary page.*

The relevant portions of the pilot description read:

*WITH RESPECT TO RENTAL USES:*

\* \* \* \* \* \*

C.) MULTI–ENGINE AIRCRAFT

Any pilot holding an FAA Commercial Pilot Certificate with FAA Multi–Engine and Instrument Rating who has flown a minimum of 1500 hours as Pilot In Command, at least 350 hours of which shall have been in multi-engine aircraft and at least 25

hours in make and model being flown and a checkout by a Certified Flight Instructor.

*WITH RESPECT TO CHARTER USES:* [Any] pilot holding an FAA Pilot Certificate with proper ratings for the flight involved who has been approved by George Prescott.

In its motion for summary judgment, USAIG offered unrefuted evidence that Heimbecker failed to meet three of the policy's seven criteria for rental uses. First, Heimbecker lacked a commercial pilot certificate. Second, he did not have an instrument rating. Finally, Heimbecker had approximately ninety-three hours as pilot in command of multi-engine aircraft, far short of the 350 hours required by the policy.

In resisting summary judgment, Schneider Leasing advanced several contentions. First, it stated that there was a genuine issue of material fact as to the cause of the crash. Causation was relevant, according to Schneider Leasing, because USAIG's attempt to limit coverage was regulated by Iowa Code section 515.101 (1991) and could be overcome if the condition that made the policy inapplicable was not a cause of the loss. It also urged that key terms in the policy's "pilot qualification" provision are ambiguous. The policy does not define "rental" or "charter" uses, and Schneider Leasing argues that Heimbecker's use of the plane could be characterized as a charter flight.[1] Finally, it asserts that USAIG may not assert its policy defenses as a result of waiver or estoppel. The latter claim is based on an alleged meeting between Schneider Leasing representatives and USAIG representatives at which Heimbecker's pilot status was discussed. According to Schneider Leasing, it was advised that, if coverage for Heimbecker presented any problems, it would be so advised by the insurer. Schneider Leasing contends that no subsequent indication was given by the insurer indicating any problems with insurance coverage should Heimbecker pilot the aircraft. The district court did not

consider this waiver and estoppel argument in denying USAIG's motion for summary judgment.

USAIG argues that the limitation on coverage in its policy is not subject to section 515.101. That is so, it argues, because, rather than being a condition or stipulation making the policy void, it is a description of the coverages furnished under the policy from its inception. As an alternative argument, USAIG contends that section 515.101 does not apply to this limitation because the restriction on coverage is based on a change in the use of the property insured that makes the risk more hazardous.[2]

The district court denied USAIG's motion for summary judgment. It ruled that section 515.101 was applicable and that there was no change in use within the meaning of section 515.102(8).

## II. *Standard of Review.*

 Review of summary judgment rulings is for correction of legal error. Iowa R.App. P. 4. There must be no genuine issues of material fact, and the moving party must be entitled to judgment as a matter of law. Iowa R. Civ. P. 237; *see Wohlenhaus v. Pottawattamie Mut. Ins. Ass'n*, 407 N.W.2d 572 (Iowa 1987). When searching for a factual issue, we review the entire record "in the light most favorable to the nonmovant." *Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 721 (Iowa 1995). When statutory construction is at issue, review is for legal error. Iowa R.App. P. 4; *American Asbestos Training Ctr., Ltd. v. Eastern Iowa Community College*, 463 N.W.2d 56, 58 (Iowa 1990).

## III. *Interpretation of the Policy.*

 A. *Whether the transaction was a rental or a charter.* Schneider Leasing argues that an ambiguity exists in the policy. The policy does not define "rental" and "charter." Schneider Leasing asserts that USAIG's failure to define these terms cre-

---

1. The multi-engine aircraft pilot qualifications applicable to "rental" uses were not strictly applicable to "charter" uses if the pilot had been approved by a designated FAA flight examiner.

2. The provisions of § 515.101 do not affect any condition or stipulation referring to a change in the use of the property insured that makes the risk more hazardous. Iowa Code § 515.102(8).

ates an ambiguity, and that they should be construed in a light most favorable to it. *AMCO Ins. Co. v. Haht,* 490 N.W.2d 843, 844–45 (Iowa 1992). Should this be a charter use, then Heimbecker arguably met the policy requirements.[3] USAIG submitted affidavits from persons knowledgeable in the aviation industry showing that, within that industry, a "charter" use has reference to providing an aircraft and flight crew. A "rental" use exists when the aircraft owner provides only the plane.

In *AMCO Insurance,* we stated: "[w]hen words are left undefined in a policy [they will not be given] a technical meaning. Rather [they will be given] their ordinary meaning, one which *a reasonable person* would understand them to mean." 490 N.W.2d at 845 (citation omitted) (emphasis added). However, we qualified this in *Shain v. Mutual Benefit, Health & Accident Ass'n,* in which we noted that the reasonable person is "a reasonably prudent person *applying for insurance of this type.*" 232 Iowa 1143, 1149, 7 N.W.2d 806, 809 (1943) (emphasis added). Aviation insurance poses many issues not normally raised in other insurance coverage disputes. The terms used may have meanings, unknown to the general population, which are well-settled in the aviation industry. *See* 43 Am.Jur.2d *Insurance* § 506, at 581 (1982).

■ In cases like this, it is appropriate to consider extrinsic evidence to become familiar with the commercial aviation industry's specialized vocabulary. Several sections of the Restatement (Second) of Contracts (1979) bear on this issue. Section 202(3)(b) provides that: "Technical terms and words of art are given their technical meaning when used in a transaction within their technical field." Another section of the Restatement provides:

When the meaning attached by one party accorded with a relevant usage and the other knew or had reason to know of the usage, the other is treated as having known or had reason to know the meaning attached by the first party.

Restatement (Second) of Contracts § 220(2). Finally, in resolving matters of this kind, the Restatement provides that unless the interpretation issue depends on the credibility of extrinsic evidence or on a choice of reasonable inferences to be drawn therefrom, the issue is to be determined by the court as a matter of law. Restatement (Second) of Contracts § 212(2). We approved the latter rule of interpretation in *First National Bank v. Creston Implement Co.,* 340 N.W.2d 777, 782 (Iowa 1983). In the present dispute, Schneider Leasing, as an aircraft lessor, must be deemed to have been familiar with the industry meaning of the term "rental" use as contrasted to a "charter" use. The extrinsic evidence bearing on this transaction was undisputed, clear, and convincing. We believe it must be determined as a matter of law that Heimbecker's use of the plane is governed by the "rental" use provisions of the physical damage coverage.

■ *B. Interpretation and applicability of Iowa Code sections 515.101 and 515.102.* Iowa's antitechnicality statute, virtually unchanged since its adoption in 1897, states that breaches of minor terms of an insurance policy provide the insurer no excuse to void the policy. Section 515.101 reads:

Any condition or stipulation in an application, policy, or contract of insurance, making the policy void before the loss occurs, shall not prevent recovery thereon by the insured, if it shall be shown by the plaintiff that the failure to observe such provision or the violation thereof did not contribute to the loss.

Iowa Code § 515.101 (derived from Iowa Code § 1743 (1897)). Some types of policy defenses are excepted from the provisions of this statute. Thus, in section 515.102, the legislature limits the effect of section 515.101, as follows:

Any condition or stipulation referring:

(8). To a change in the occupancy or use of the property insured, if such change or use makes the risk more hazardous, ...

---

**3.** An affidavit of George Prescott, an FAA flight examiner designated in the policy, indicated that he had verified Heimbecker's ability to safely fly the aircraft, a circumstance that would have satisfied the physical damage insurance requirements for "charter" uses.

*shall not be changed or affected by the provision of section 515.101.*

Iowa Code § 515.102(8) (emphasis added).

We need not reach the issue of whether use of a pilot not meeting qualifications required by the policy is a change in use that makes the risk more hazardous. We are confident that the limitation on coverage that is being contested in this litigation is not of a type that triggers section 515.101. Although the court of appeals, in *Global Aviation Managers v. Lees,* 368 N.W.2d 209, 212 (Iowa App.1985), broadly interpreted section 515.101 to apply to all provisions contained in a policy of insurance, the effect of which is to avoid coverage, we are unable to read this statute in that manner. The statute only extends to "any condition or stipulation in [a policy or contract of insurance that makes] the policy void before the loss occurs." Iowa Code § 515.101.

Shortly after the enactment of section 515.101, this court, in *Banco De Sonora v. Bankers' Mutual Casualty Co.,* 124 Iowa 576, 100 N.W. 532 (1904), held that the statute did not apply to a condition precedent to coverage under the terms of the contract. The insurance policy in the *Banco* case covered mailings of Mexican currency. For the insurance to be effective, the insured was required to mail a letter prior to the departure of the shipment describing the amount of currency mailed. The letter was to be deposited in the post office from which the currency was mailed. *Id.* at 578, 100 N.W. at 533. In seeking to demonstrate its compliance with the policy conditions, the bank relied on the letter postmarked after the money had been stolen from the mails. In seeking to recover notwithstanding its failure to comply with the policy condition, the bank relied on section 515.101 (then codified as section 1743). This court stated:

> This section has no application, for that, by not complying with the condition precedent, no contract of insurance was effected and hence there was no condition or stipulation to be violated.

*Id.* at 582–83, 100 N.W. at 535.

Similarly, in *Midwest Office Technology, Inc. v. American Alliance Insurance Co.,* 437 N.W.2d 555, 557 (Iowa 1989), we reviewed our prior cases involving section 515.101 and approved the district court's conclusion that section 515.101 was inapplicable because the policy defense was not based on abrogation of the policy but rather the limits placed on the coverage afforded thereunder. *Midwest Office,* 437 N.W.2d at 557. We reach the same conclusion concerning the present policy dispute. The limitation on which USAIG relies does not void any existing coverage under its policy but simply places this particular loss outside the coverages afforded from the inception of the contract.

## IV. *Schneider Leasing's Waiver and Estoppel Argument.*

As we have noted, Schneider Leasing contends in its resistance to the motion for summary judgment that USAIG by its conduct is estopped from raising its policy defense based on Heimbecker's qualifications or has waived such defense. Although the district court found it unnecessary to reach that issue, we must consider it because Schneider Leasing seeks to preserve the order denying summary judgment on this ground.

Schneider Leasing's resistance to the summary judgment motion incorporates by reference the sworn interrogatory answers of Paul Schneider on behalf of the corporation. As to his own testimony to be offered at trial, he stated in this sworn answer:

> Paul Schneider, Desert Aviation, Scottsdale, Arizona, is aware that Heimbecker was discussed at a meeting with USAIG representatives. He was told that if coverage for Heimbecker presented any problem, they [Schneider Leasing] would be advised. They were not told of any problems.

A similar answer was made by Paul Schneider concerning the proposed testimony of George Prescott, an FAA examiner who is claimed to have been present at the same meeting.

Although the interrogatory answer given with respect to Prescott's proposed testimony is arguably hearsay and thus fails to meet the admissibility requirements made applicable to opposing affidavits under Iowa Rule of

Civil Procedure 237(e), Paul Schneider's sworn answer concerning his own proposed testimony purports to be based on personal knowledge. Although the sworn answer to the interrogatory does not contain a verbatim account of the conversations relied on, it sufficiently describes the gist of those conversations to raise a genuine issue of material fact concerning the claims of waiver and estoppel. Consequently, we do not disturb the district court's order denying the summary judgment motion. Our decision on this appeal limits the basis for any claim by Schneider Leasing to successfully establishing its waiver or estoppel theory. Absent success in that endeavor, USAIG is entitled to a judgment confirming that its policy does not cover the loss. Costs on appeal are assessed forty percent to appellant; sixty percent to appellee.

**AFFIRMED AS MODIFIED AND REMANDED.**