**AIG AVIATION, INC. and National Union Fire Insurance Co., Appellants,**

v.

**HOLT HELICOPTERS, INC., Appellee.**

**No. 04–05–00291–CV.**

Court of Appeals of Texas, San Antonio.

April 26, 2006.

Thomas C. Wright, R. Russell Hollenbeck, Wright Brown & Close, L.L.P., Houston, Fred J. Meier, Thomas B. Alleman, Winstead Sechrest & Minick, P.C., Dallas, for appellants.

Beth Watkins Squires, Law Office of Beth Squires, Michael C. Boyle, Langley & Banack, Inc., San Antonio, Jon Kettles, The Kettles Law Firm, Dallas, for appellee.

Sitting: SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

The primary issue on appeal is whether the insured, Holt Helicopters, Inc., whose aircraft sustained damages while operated by a pilot, without the flight experience required by the policy, may recover when there is no causal connection between the accident and the pilot's lack of experience. The trial court ruled, as a matter of law, that the insured could recover unless the insurer proved a causal connection. On appeal, AIG Aviation, Inc. and National Union Fire Insurance Co. (hereinafter AIG) contend the trial court erred in: (1) ruling, as a matter of law, that proof of causation between the accident and the undisputed breach of the insurance policy was required; (2) imposing additional statutory damages in the absence of legally and factually sufficient evidence of a violation of the Insurance Code; and (3) awarding Holt attorney's fees. We affirm the trial court's judgment.

### BACKGROUND

Holt Helicopters sued to recover for the loss of one of its helicopters covered under National Union Fire Ins. Co.'s property insurance policy issued through AIG Aviation Inc. Holt's Robinson R–22 Beta II helicopter crashed while herding cattle near Redrock, New Mexico on October 30, 2001. Holt submitted a claim to AIG for the property damage and following an investigation of the crash, AIG sent a letter denying coverage due to the pilot's lack of experience. Holt sued AIG for breach of contract, wrongful denial of its claim, and violations of the Insurance Code. At the time of the accident, Fred Graff, an employee of Holt, was the pilot of the helicopter. Item five of the policy declarations includes an amendment titled "Pilot Warranty Completion." The amendment provides coverage for the helicopter while piloted by Larry Holt or two other employees, but it does not reference Graff. In addition to the named pilots, the

amendment also provides that the aircraft may be piloted by:

[a]ny commercial pilot with rotary wing ratings properly certificated by the FAA having a minimum of 1,000 logged flying hours in rotary wing aircraft, including 100 hours of which are in Robinson R22 model aircraft.[1]

Within the exclusions section of the insurance policy it states: "This policy does not apply ... [t]o any Insured while the aircraft is in flight ... if piloted by other than the pilot or pilots designated in the Declarations." Graff, as the pilot at the time of the accident, had only 685 logged flying hours rather than the required 1,000 hours and was not listed as a pilot in the "Pilot Warranty Completion."

Both parties filed cross motions for summary judgment to determine whether AIG could deny coverage based on the policy without establishing a causal connection between the crash and Graff's lack of experience. Granting Holt's motion for partial summary judgment, the trial court found that there was coverage under the policy unless AIG proved that Graff's lack of required flight time was a cause of the accident.[2]

The remaining issues were submitted to a jury. The jury found that AIG did not establish a causal connection between the breach of the Open Pilot Warranty relating to the flight time and the accident, a finding AIG does not contest before this court. The jury also found AIG engaged in unfair or deceptive acts that caused damages to Holt and knowingly refused to pay a claim without conducting a reasonable investigation of the claim. The trial court awarded Holt: (1) $65,000 for prop-

erty damage; (2) $36,574.20 in statutory interest damages; (3) $10,159.50 in prejudgment interest; (4) $130,000 in statutory damages for knowingly violating provisions of the Insurance Code; (5) $282,910 in attorney's fees for trial counsel; and (6) additional contingent attorney's fees relating to a successful response on appeal.

## THE LAW ON CAUSATION

■ AIG brings forth two arguments as to why the trial court erred in ruling that causation between the breach and the accident was required. First, AIG contends the Texas Supreme Court's rationale in *Puckett v. U.S. Fire Insurance Co.*, reviewing causation in aviation insurance contracts, is no longer viable. 678 S.W.2d 936 (Tex.1984). Second, even if the rationale is still viable, *Puckett* is not applicable. Because whether causation is required is a pure question of law, the trial court's conclusion is reviewed de novo. *Natividad v. Alexsis*, 875 S.W.2d 695, 699 (Tex.1994).

### A. The *Puckett* Case

In *Puckett*, the Texas Supreme Court specifically addressed "whether an insured's failure to have his plane inspected need be the cause of an accident in order for the insurance company to avoid liability under an aviation policy for damages resulting from that accident." *Puckett*, 678 S.W.2d at 937. *Puckett* failed to conduct an annual inspection in order to maintain a valid airworthiness certificate as required by the insurance policy. *Id.* Approximately a month after the airworthiness certificate expired, *Puckett's* airplane crashed. *Id.* Both parties stipulated that the lack of a valid certificate did not have a causal connection to the crash. *Id.*

---

1. The parties referred to this provision of the amendment, which delineates required experience rather than a specific pilot, as the "Open Pilot Warranty."

2. The court specifically found: "[t]here is coverage under the policy unless Defendants can establish a causal connection between a breach of the policy and the accident."

Reversing the appellate court, the Texas Supreme Court held that "an insurer cannot avoid liability under an aviation liability policy unless [the breach] is either the sole or one of several causes of the accident." *Id.* at 938. The court acknowledged that the policy did not require a causal connection between the breach and the accident. However, the court further determined that to deny coverage when the breach of contract in no way contributes to the loss would be unconscionable and thus against public policy. *Id.* Finally, the court relied on a "anti-technicality" statute, covering fire insurance policies, as an indication that the public policy in Texas disfavored denying coverage based on a policy breach that did not contribute to the loss. *Id.*

### B. *Puckett's* Viability

■■■■ AIG argues that *Puckett's* rationale requiring causation is no longer viable and requests that this court "call for" *Puckett* to be overruled. AIG argues that the majority of jurisdictions do not require causation and *Puckett* contradicts the long standing rule that courts should give effect to the plain meaning of an unambiguous contract. Furthermore, that former and current statutes do not support *Puckett's* rationale. Holt claims *Puckett* is still good law in Texas. We agree with Holt that

*Puckett* remains binding precedent in Texas.[3]

In challenging *Puckett's* viability, AIG firmly relies on two principles that the *Puckett* court acknowledged. First, the court recognized that the majority of jurisdictions do not require causation. *Puckett*, 678 S.W.2d at 938. Second, under general rules of contract, the court acknowledged that it has a duty to give full effect to the plain meaning of an unambiguous insurance contract. *Id.* Nonetheless, the court determined that the better rule was to require causation and that even with unambiguous contracts, courts must still determine whether contractual terms violate public policy. *Id.* Because the Texas Supreme Court refuted these challenges in its opinion we will not revisit these claims.[4]

■■■ AIG also argues that the "anti-technicality" statute supporting the causation requirement in *Puckett* is no longer applicable here. The *Puckett* court did rely, in part, on Section 6.14 of the Insurance Code[5] as an indication that the public policy of the State required causation in analogous situations. *Id.* at 938. AIG claims Section 6.14 of the Insurance Code has been recodified to Section 862.054 and fails to describe the State's public policy on aviation insurance contracts. AIG points out that Section 862.054,[6] like its predeces-

---

**3.** While it is questionable if the Texas Supreme Court will continue to follow the rational in *Puckett*, we are bound by existing precedent as an intermediate appellate court.

**4.** Justice Pope's dissent in *Puckett* clearly articulates AIG's points.

**5.** Section 6.14 of the Texas Insurance Code states:

No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefore, upon personal property, shall render void the policy or contract, or constitute a defense to a suit

for loss thereon, unless such breach or violation contributed to bring about the destruction of the property.
*Repealed* by Acts 2001, 77th Leg., ch. 1419 § 31(a), eff. June 1, 2003.

**6.** Section 862.054 states

Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy or contract of insurance on personal property, or of an application for the policy or contract: (1) does not render the policy or contract void; and (2) is not a defense to a suit for loss.

sor, relates to fire and personal property insurance and if the Legislature intended to expand its application they would have done so at the time they recodified Section 6.14.

Although AIG's points are well taken, we disagree that the amended anti-technicality statute changes *Puckett's* application. First, as Holt points out, at the time of the accident Section 6.14, not Section 862.054, was in effect. *Repealed* by Acts 2001, 77th Leg., ch. 1419 § 31(a), eff. June 1, 2003. Second, the fact that Sections 6.14 and 862.054 may relate only to fire or personal property insurance is inconsequential considering the *Puckett* ·court specifically acknowledged that the anti-technicality statute covers fire insurance policies but the statute evidences a public policy applicable to aviation contracts. *Puckett*, 678 S.W.2d at 938. Finally, AIG's argument that the Legislature intended to exclude commercial aviation insurances policies when it recodified Section 6.14 to Section 862.054 because it failed to specifically mention aviation contracts, is unsupported by the legislative history. *See* HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 2811, 77th Leg., R.S. (2001). The Legislature intended to do nothing more than recodify the prior section.

The bill analysis of the enrolled version of House Bill 2811, which enacted Section 862.054, and the corresponding House committee report state "[t]he substance of the law has not been altered. The sole purpose of these provisions is to compile the relevant law, arrange it in a logical fashion, and rewrite it without altering its meaning or legal effect." HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 2811, 77th Leg., R.S. (2001). As such, the

TEX. INS.CODE ANN. § 862.054 (Vernon 2003).

Legislature has met on numerous occasions since the helicopter crash without changing the substantive legal effect and meaning of Section 6.14.

Given AIG's challenges to *Puckett's* viability fail to present any reasoning that the *Puckett* court did not consider, we decline to overrule *Puckett*.

## C. *Puckett's* Application

■ AIG contends that even if *Puckett* remains good law in Texas it is not applicable in this case. Primarily, AIG claims the requirement that the operating pilot have a minimum of 1,000 logged flying hours was a factor in insuring the aircraft and establishing the premium. Thus, excluding coverage based on the pilot's lack of the minimum flying hours, does not amount to denying coverage on the basis of a mere technicality as in *Puckett*. We disagree that *Puckett* is distinguishable.

First, a comparison of the facts in *Puckett* with this case indicates that requiring an airworthiness certificate is as much a basis of the bargain of an insurance contract as the Open Pilot Warranty.[7] The insurance policy in *Puckett* unambiguously provided "there is no coverage under the policy if the aircraft['s] ... airworthiness certificate is not in full force and effect." *Id.* at 938. The policy required *Puckett* to annually inspect the aircraft, which *Puckett* failed to do. The policy, like the one in this case, did not require a causal connection between the breach of the policy and the accident. *Id.* The only reasonable purpose for requiring an airworthiness certificate, and specifically an annual inspection, is to limit the insurer's liability caused by an inappropriately maintained and unsafe aircraft. The *Puckett* court did not deter-

7. Another exclusion under AIG's policy in this case "is if the airworthiness certificate of the aircraft is not in full force and effect."

mine that the airworthiness certificate was not a basis of the bargain, rather it held that a breach of the clause without a finding of causation violated public policy. *Id.*

Similarly, AIG's Open Pilot Warranty limited its liability caused by pilot error or negligence of a less experience pilot. *See, e.g., United States Aviation Underwriters, Inc. v. Cash Air, Inc.,* 409 Mass. 694, 568 N.E.2d 1150, 1152 (1991) (stating "the condition has the worthwhile effect of pressuring an insured, at its peril, to be certain that aircraft are flown by experienced and qualified pilots"). Both the airworthiness certificate and the Open Pilot Warranty address key safety concerns and appear as an essential part of an insurance contract in determining the acceptable risks to insure and at what premium. Here, the jury determined that there was no causal connection between the breach of the Open Pilot Warranty and the accident, while in *Puckett* both parties stipulated that there was no causation.[8] Consequently, under these facts, *Puckett* is indistinguishable in that both an airworthiness certificate and an Open Pilot Warranty formed the basis of the bargain.

The attempt to distinguish *Puckett* because an airworthiness certificate is a "mere technicality" and pilot experience is not, is without merit. *Puckett's* reference to a mere technicality does not describe the safety value or weight of an airworthiness certificate or a particular contract provision. Rather, it is the phrase used to describe the policy breach (the "technicali-

ty") that results in the denial of coverage when the cause of the loss is covered by the policy.

The technicality or unrelated breach is the basis of the "anti-technicality" statute referred to in *Puckett. Puckett,* 678 S.W.2d at 938. The statute does not distinguish between the variety of provisions in a fire policy, rather it requires the breach of the policy to contribute to the loss before coverage is denied. *Id.* It is the unrelated breach, whatever it might be, that is the technicality not the specific fire policy provision. Thus, under a fire policy the requirement of occupancy is a technicality under the statute if it does not contribute to the loss. *See Aetna Ins. Co. v. Lewis,* 204 S.W. 1170 (Tex.Civ.App.-Austin 1918, writ ref'd) (holding the "anti-technicality" statute is applicable to a defense that the building in which the insured property was located was vacant, in violation of a promissory warranty, if the violation did not contribute to the loss). Likewise in *Puckett* it is not the airworthiness certificate or the Open Pilot Warranty in this case that are the technicalities. Both are important safety features but both are "technicalities" when they are not the cause of the loss.

◼ Finally, the public policy rationale supporting the *Puckett* decision is equally pertinent in this case. AIG's sole reason for denying coverage is due to the breach of the Open Pilot Warranty that a jury found did not cause the accident. It follows, then, that but for the breach of the

---

**8.** As discussed below, AIG had the burden of proof that the breach of the Open Pilot Warranty was the sole or one of several causes of the accident. The jury charge in this case defines causal connection as "the breach of the Open Pilot Warranty was a cause of the accident, and without which, the accident would not have occurred. There may be more than one cause of the accident." If the jury charge submitted the wrong causation element it was incumbent upon the party carrying the burden of proof, AIG, to object and submit a corrected version. While AIG objected to the charge as imposing the causation burden of proof on AIG, it is questionable whether the objection was specific enough to bring to the court's attention that the charge carried an erroneous causation element. In any event, on appeal, AIG does not complain about any jury charge error.

Open Pilot Warranty the accident would be covered. In *Puckett* the court determined that because the accident was covered by the policy it would be against public policy, in that situation, to allow the insurer to escape liability merely because of a nonsubstantive breach. *Puckett*, 678 S.W.2d at 938. Under these circumstances, *Puckett's* public policy rationale is applicable in order to prevent the insurer, AIG, from obtaining a windfall by denying coverage for a risk it undertook to insure and for which Holt paid for. *See Puckett*, 678 S.W.2d at 938 (agreeing that to allow "an insurance company to avoid liability when the breach of contract in no way contributes to the loss is unconscionable and ought not be permitted").

As a result, because the facts in *Puckett* are analogous to this case we conclude even if AIG's Open Pilot Warranty was a basis of the bargain, under *Puckett*, a breach of such provision without a causal connection to the accident cannot support a denial of coverage. Therefore, pursuant to *Puckett*, denying coverage in this situation would be against public policy.

### D. Burden of Proof on Causation

■ The trial court determined that AIG must prove that the breach of the Open Pilot Warranty caused the accident. Holt claims that AIG waived any error relating to the trial court's assignment of the burden of proof because it did not properly present the issue on appeal pursuant to Rule of Appellate Procedure 38.1(h). AIG asserts that it has not waived its argument because it has consistently urged that the Open Pilot Warranty

is a condition precedent to coverage and not an avoidance, affirmative defense, or an exception to coverage. AIG's argument that the Open Pilot Warranty is a condition precedent complies with Rule 38.1(h).

Holt relies on Article 21.58(b) in disclaiming the burden of proof for causation. TEX. INS.CODE art. 21.58(b) (Vernon 1991) (*repealed* eff. April 1, 2005). Whereas AIG asserts Article 21.58(b) does not impose a burden that it has to prove causation rather only that an exclusion or exception to coverage applied. Article 21.58(b) states:

> In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or affirmative defense.

*Id.*

As such, AIG does not directly contest the trial court's assignment of the burden of proof as it relates to an avoidance or affirmative defense.[9] AIG does state, however, that the Open Pilot Warranty is a condition precedent not an avoidance, affirmative defense, or an exception to coverage. As a condition precedent, AIG claims, there was simply no coverage from the inception of the flight. It seems AIG is arguing that because the Open Pilot Warranty was a condition precedent it is outside the realm of *Puckett*—since it dealt with exclusions—and implicitly Article 21.58(b).[10] However, even assuming the

---

**9.** In their brief AIG states "[a]pplying the plain language of [Section 21.58(b)], the burden imposed on AIG and National Union is simply to prove the applicability of an exclusion or exception, not that a breach of a policy provision was a cause of the loss."

**10.** While AIG asserts that the Open Pilot Warranty is a condition precedent and not an exclusion it fails to specify how this distinction caused the trial court to commit error. Courts addressing the distinction between a condition precedent, warranties, conditions subsequent, or exclusions in an insurance policy have done so in an effort to determine if

Open Pilot Warranty was a condition precedent, none of the cases AIG provides directly support its proposition and at least one appellate court in Texas, implicitly, disagrees.

In *Fidelity & Casualty Co. of N.Y. v. Burts Brothers, Inc.*, the court determined that the insurer needed to establish a causal connection between the breach of the insurance clause requiring certain minimum pilot qualifications and the accident. 744 S.W.2d 219, 222 (Tex.App.-Houston [1st Dist.] 1988, writ denied). In *Fidelity* the pilot operating the helicopter at the time of the crash lacked the minimum logged flying hours and commercial pilot license required by the insurance policy. *Id.* The pilot had only 200 hours of flying time and a private pilot license when the policy required a minimum of 2,000 logged flying hours and a commercial pilot license. *Id.* at 221.

In *Fidelity* the court concluded that in order for the insured to have coverage on its helicopter there had to be a qualified pilot as the insurance policy required. *Id.* at 222 (stating "[w]e conclude that the policy is subject to only one reasonable interpretation: the policy does not afford coverage *unless* the pilot has the qualifications and ratings set out in Item 7 of the policy") (emphasis added). Nonetheless, the court required the insurer to prove a causal connection between the breach and the accident in order to establish its entitlement to summary judgment. *Id.* Implicitly, the court held that even if an insured failed to meet a condition precedent of coverage the insurer must still bear the burden of establishing a causal connection in order to avoid liability. *See*

*Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 358 (Tex.App.-San Antonio 1998, pet. denied) (defining a condition precedent as "an event that must occur before a right can accrue to enforce an obligation").

While AIG is unable to provide any Texas authority in support of its proposition, it cites to cases from other jurisdictions. However, a review of those cases indicates that they are distinguishable and fail to support AIG's proposition. At best, these cases support AIG's proposition that in order to avoid liability under a breach of the basis of the bargain, causation should not be required. *See Aviation Charters, Inc. v. Avemco Ins. Co.*, 170 N.J. 76, 784 A.2d 712, 714 (2001); *Schneider Leasing, Inc. v. U.S. Aviation Underwriters, Inc.*, 555 N.W.2d 838, 842 (Iowa 1996); *U.S. Aviation Underwriters, Inc. v. Cash Air, Inc.*, 409 Mass. 694, 568 N.E.2d 1150, 1152 (1991). Thus, none of the cases AIG provides support the proposition that a condition precedent in an insurance policy is outside the realm of *Puckett* or Article 21.58(b). Accordingly, we overrule AIG's first issue.

### LEGAL AND FACTUAL SUFFICIENCY CHALLENGES

#### A. Standard and Scope of Review

■ In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding, except if the jurors could not disregard the contrary evidence. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998) (stating that in determining if the evidence is legally sufficient to support a bad faith judgment that

---

their "anti-technicality" statute or public policy requiring causation apply. *See, e.g., Edmonds v. Avemco Ins. Co.*, 492 F.Supp. 970, 974 (D.C.Mass.1980); *American States Ins. Co. v. Byerly Aviation Inc.*, 456 F.Supp. 967,

970 (S.D.Ill.1978); *Global Aviation Ins. Managers v. Lees*, 368 N.W.2d 209, 211 (Iowa Ct.App.1985); *Security Mutual Cas. Co. v. O'Brien*, 99 N.M. 638, 662 P.2d 639, 640–41 (1983).

the insurer did not conduct an objective and reasonable investigation "we resolve all conflicts in the evidence and draw all inferences in favor of the jury's findings"). In reviewing a finding of an essential negative fact—no reasonable investigation—we inquire whether the evidence, viewed in the light most favorable to Holt, permits the logical inference that AIG did not conduct a reasonable investigation prior to denying the claim. *See Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993) (acknowledging the conundrum of reviewing the record "to evaluate an insurer's claim that there is 'no evidence' of a negative fact"). When factual sufficiency of the evidence is challenged, we consider all of the evidence, both in support of and contrary to the challenged implied finding, and uphold the verdict unless it is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

### B. Statutory Damages

 The jury was asked to determine whether AIG refused to pay Holt's property damage claim without conducting a reasonable investigation of the claim and whether AIG did so knowingly. The jury answered in the affirmative on both questions and the trial court awarded statutory damages pursuant to former Section 21.21 [11] and 21.55 [12] of the Insurance Code. As part of a prohibited laundry list under Section 21.21 it is an unfair settlement practice to refuse to pay for a claim with-

out conducting a reasonable investigation. TEX. INS.CODE ANN. art. 21.21 (Vernon Supp.2004–05). Reasonableness, is an objective standard focusing on whether a reasonable insurer under the circumstances would have acted in a similar manner. *Aranda v. Ins. Co. of North America*, 748 S.W.2d 210, 213 (Tex.1988).

AIG concluded that Holt's property damage claim was not covered because of the pilot's lack of experience. Presumably, AIG determined that Graff committed pilot error attributable to him having less than 1,000 logged flying hours and this lack of experience was the sole or one of several causes of the accident. In this context, whether AIG conducted a reasonable investigation is correlated to the reasonableness of its basis for denying the claim. If AIG's basis for denying the claim is reasonable in light of its investigation then its investigation must have been reasonable. Conversely, if its basis for denying the claim is unreasonable, its investigation would fail to meet the reasonable standard in Article 21.21.

The evidence indicates that during AIG's investigation of the crash, AIG knew it would have to show a causal connection between the pilot's lack of flying hours and the accident.[13] In an internal communication between Robert McNabb and James Watt, vice presidents for AIG, McNabb wrote:

---

**11.** Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868; *amended by* Act of April 25, 1957, 55th Leg., R.S., ch. 198, § 4, 1957 Tex. Gen. Laws 401 (subsequent amendments omitted), *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version at TEX. INS.CODE ANN. § 541.060 (Vernon 2005)).

**12.** Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03(a), 1991 Tex. Gen. Laws 939,

1045 (subsequent amendments omitted), *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version at TEX. INS. CODE ANN. § 542.060 (Vernon 2005)).

**13.** Irrespective of the causation element required in the jury charge, we evaluate the reasonableness of AIG's conduct in investigating the claim under the causation element required in *Puckett*.

[i]f we require a causal connection it is probably there: above 5000 feet the engine correlator does not function very well. This flight was the pilot's first flight to any altitude exceeding 5000 feet....I am advised that ... no causal connection [may be] required.... In Texas that would be news to me....

McNabb admitted that by November 8, 2001, and prior to the adjuster's visit to the crash site, McNabb had determined that a causal connection between the pilot's insufficient experience and the accident existed. On November 8, 2001, McNabb wrote another email to Watt stating:

I have also asked adjuster to visit crash site and document the terrain involved with an eye toward documenting the file for adequacy of investigation should we become involved in coverage litigation. In summary, we seem to be faced with a weak causal connection argument, but a clear indication that we had never heard of this pilot and would never have agreed to insure him without certain specific requirements.

When asked what he meant by causal connection, McNabb stated that "[j]ust whether or not the pilot's [sic] failing to have been identified in the policy and not meeting the Open Pilot Warranty had anything to do with the accident." McNabb testified that his sole source of information was what the independent adjuster, Patrick Montgomery, provided. However, no one examined the engine internally to see if engine malfunction contributed or caused the accident. Further, McNabb agreed that investigating what the rotor RPM was at the time of the accident could be an important factor in determining whether the aircraft was operating properly at the time of the accident but did not inquire or make any efforts to find out.

As the investigator and adjuster for AIG, Patrick Montgomery was not requested, nor did he determine the cause of the accident. Montgomery's investigation apparently revealed that the accident occurred at high density altitude which would have made it more difficult to operate the helicopter. At the time of Montgomery's deposition, he testified that he worked for AIG since 1991 or 1992 as an attorney and beginning in July 2001 as a consultant. Since July 2001 Montgomery had conducted a total of about 30 investigations, 25 or so for AIG, and only five relating to helicopter accidents.

He further testified that he met with Graff and the passenger and recorded their statements, as he customarily did, but was unaware of the location of the tapes or whether he transcribed the tapes. Montgomery stated he did not recall providing any information to AIG about the effect of Graff having 685 logged flying hours instead of 1,000 on the accident. When asked if he would go back and conduct an additional investigation before feeling confident to give opinions about the cause of the accident he stated: "Well, if I were asked to determine the cause of the accident, yes, I would do additional investigation."

As part of his investigation, Montgomery went out to the crash site and took a number of pictures of the aircraft but did not recall testing, inspecting, or examining the aircraft for mechanical malfunction. Montgomery testified that in conducting his investigation he did not recall inspecting the drive belts on the engine, transmission, or the tail rotor blades. He did not inspect the engine, lower RPM lights, RPM audio system and did not test the fuel or the fuel filter. Importantly, Mr. Holt, as a designated expert, testified that a power loss at that altitude can be attributed to a number of mechanical malfunc-

tions, apparently, none of which were investigated.

Montgomery sent this minimal information to McNabb who concluded that the crash was caused by Graff's inexperience in operating the helicopter at high altitude. McNabb then informed James Watt, vice president of AIG's hull claims division, that he recommended that the claim be denied. Watt also concluded, solely based on the limited information provided by Montgomery, that the pilot's lack of experience contributed to the accident and denied Holt's claim.

At trial AIG's expert, Warren Wandel, testified that the pilot's lack of experience in high-hot conditions contributed to the accident. Notably, the Open Pilot Warranty did not specifically require flight experience in high-hot conditions. But, Wandel also testified that 40 hours of flight time in high-hot conditions would provide sufficient experience. Graff had over 40 hours of flight time in high-hot conditions. Ultimately, Wandel was not able to conclusively determine whether Graff's insufficient flight hours contributed to the crash. Since AIG denied Holt's claim on the basis of pilot error, it would seem, and the jury was free to infer, that a reasonable investigation should have inquired into Graff's experience in high-hot conditions and should have discovered that he had over 40 hours in such conditions. Based on AIG's expert testimony, the jury could have reasonably concluded that if AIG had conducted a reasonable investigation it would have ruled out pilot error.

On the other hand, Holt's expert, Colonel William Lawrence, with an equally impressive background, testified that the pilot's "failure to have a total of a thousand generic rotary wing aircraft hours had no effect on th[e] accident." Lawrence concluded that Graff's lack of 315 generic flying hours did not cause the accident rather "some kind of a power loss or some kind of wind gust" was the cause. Lawrence stated that Graff's response to what appeared to be a power failure was the correct action to take. Lawrence also testified that in his opinion the better trained pilots were those who flew in solely one type of aircraft. Significantly, Graff had 650 of his 685 flight hours in the type of helicopter involved in the accident. In rejecting AIG's causal connection theory as unreasonable, the jury was free to infer that with 650 flight hours in an R–22 helicopter, Graff was as equally qualified as a pilot with 1,000 generic flight hours, and that AIG's investigation did not indicate pilot error.

Finally, there was some evidence that AIG acted knowingly. The insurance code and the DTPA both define "knowingly" as "actual awareness" of the falsity, unfairness, or deception. TEX. INS.CODE ANN. art. 21.21 § 2(c) (Vernon Supp.2004–05); TEX. BUS. & COM.CODE ANN. § 17.45(9) (Vernon 2002). AIG knew that in order to deny Holt's claim based on the breach of the Open Pilot Warranty it needed to establish a causal connection between Graff's lack of 1,000 flying hours and the accident. McNabb stated that "it was a reasonable conclusion to draw that this particular accident in the Robinson R22, had he had more flight hours and experience, might not have happened." The jury may have accepted McNabb's general conclusion but could reasonably have taken issue with how Montgomery's investigation indicated that Graff committed pilot error and how it contributed to the accident. Particularly, considering AIG's investigation did not reasonably indicate any pilot error caused the accident. McNabb's hypothesis appears reasonable before AIG's investigation but not thereafter. Consequently, there is some evidence to support the jury finding that AIG knowingly failed to conduct a reasonable investigation before denying Holt's claim.

Based on the evidence, the jury could have concluded that AIG knowingly conducted an outcome-oriented investigation. It was reasonable for the jury to infer that Montgomery's investigation did not indicate sufficient information for either McNabb or Watt to reasonably conclude that there was pilot error, much less that pilot error due to lack of the 1,000 logged flying hours contributed to the accident.

The evidence provides, at least, a basis for reasonable minds to reach the conclusion that AIG knowingly refused to pay Holt's claim without conducting a reasonable investigation. Consequently, the evidence permits the logical inference that AIG, knowingly, failed to conduct a reasonable investigation. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Further, examining all of the evidence we are unable to conclude that the evidence that supports the jury's finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Accordingly, we overrule AIG's second issue.

### C. Attorney's Fees Award

AIG asserts we must also reverse the award of attorney's fees and render that Holt take nothing or remand if we sustain any of AIG's issues on appeal. However, having determined that AIG's challenges on appeal fail to present reversible error we overrule AIG's conditional issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Dissenting opinion by SARAH B. DUNCAN, Justice.

SARAH B. DUNCAN, Justice, dissenting.

In *Puckett,* the supreme court held that "[i]t would be against public policy to allow the insurance company ... to avoid liability by way of a breach" of a clause excluding "coverage ... if the aircraft ... airworthiness certificate is not in full force and effect" because that requirement "amounts to nothing more than a technicality." *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). In this case, on the other hand, the policy's open pilot warranty formed the "basis of the bargain" between the parties—the antithesis of a mere "technicality." Indeed, according to the AIG underwriter who worked on Holt's policy, Alan Baker, AIG takes "a good close look at what type of pilots would be operating the aircraft and what type of uses the aircraft would be involved in"; and a particular pilot's qualifications and training are factors routinely considered in determining whether and how much to modify a policy's "base rate" premium.

Because this case does not involve a requirement that is a mere "technicality," I would hold *Puckett* does not apply and reverse the trial court's judgment and render judgment in AIG's favor. I therefore dissent.